A95A1170. IN THE INTEREST OF A. M. B. et al., children.
(464 SE2d 253)

BLACKBURN, Judge.

Herchel and Vicki Bacon appeal the decision of the trial court to terminate their parental rights asserting that in those termination cases where (1) a reunification order has been in place for less than a year and (2) the child is not in the custody of the parent whose rights are subject to termination, termination proceedings may not take place. The appellants also assert that the Department of Family & Children Services (DFACS) has a duty to make reasonable efforts to reunite the family for at least one year after a reunification order is entered as a precondition to termination. These conclusions are contrary to the clear language of OCGA § 15-11-81 (b) (4) (C), and, as aptly demonstrated by the facts of this case, establish an unsound policy.

"The appropriate standard of appellate review in a case where a parent's rights to her [children] have been severed is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met." (Citations and punctuation omitted.) *In the Interest of J. H.*, 210 Ga. App. 255, 258 (435 SE2d 753) (1993).

OCGA § 15-11-81 (a) outlines a two-step procedure for considering when to terminate parental rights. *In the Interest of L. S. F.*, 217 Ga. App. 478 (458 SE2d 370) (1995). First, the trial court must con-

sider whether there is clear and convincing evidence of parental misconduct or inability as provided by OCGA § 15-11-81 (b). Parental misconduct is determined by finding the presence of four factors: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If there is clear and convincing evidence of such parental misconduct or inability, the court shall proceed to the second and final step, determining whether the termination of parental rights is in the best interest of the child. *In the Interest of L. S. F.*, supra. "Obviously, those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (370 SE2d 490) (1988).

The evidence amply supports the trial court's determination as to the first, third and fourth factors. As for the first factor, an unappealed order entered by the juvenile court established that the children were deprived within the meaning of OCGA § 15-11-81 (b) (4) (A) (i). *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993) (unappealed decision in deprivation hearing is binding on appeal).

As for the third factor, evidence reflects that the deprivation is likely to continue into the future. DFACS has worked with this family since 1981. Both parents have been in and out of prison since that time, and DFACS has had temporary custody of the children off and on for prolonged periods since 1987. Both parents were released from prison in the spring of 1994 only to be returned shortly thereafter for parole violations. Further, despite warnings in April 1994 that failure to cease would jeopardize their parental rights, both parents continued with their substance abuse habits. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." *In the Interest of J. D. D.*, 215 Ga. App. 68, 70 (449 SE2d 655) (1994).

Also, evidencing the likelihood that the deprivation will continue in the future was the testimony of a psychologist who evaluated the parents. The psychologist determined that the mother had a personality disorder that rendered her an inappropriate role model and an ineffectual parent to R. N. B., the only child with whom she retained any parental rights. As to the father, the psychologist determined that he "had no sense of the magnitude of the deprivation the children were suffering" as a result of his behavior that included alcohol and physical abuse. The psychologist concluded that neither the

mother nor father could alter their respective situations in order to adequately parent the children in light of their attitudes, behavior, substance abuse problems, personality dysfunction and marginal social adjustment.

As to the fourth factor, clear and convincing evidence supported the trial court's determination that continued deprivation would harm the children. At the time DFACS last took temporary custody of the children, they needed clothing, shoes, haircuts as well as dental and medical care. They complained of being hungry and were underweight. All of the school-age children were behind academically. Two of the children who were ages 13 and 11 at the time of the termination hearing were reading at a second-grade level. One child who was age nine at the time of the termination hearing could not read at all. A psychologist who evaluated each of the children testified as to the numerous emotional problems each of them suffered as a result of parental neglect. The psychologist also testified that the children had demonstrated marked improvement in all areas since their removal from the appellants' home and that they would continue to improve with counseling and exposure to a stable, nurturing environment.

It is with regard to the application of the second factor — lack of parental care or control is the cause of the deprivation — that appellants assert error. In particular, they argue that the trial court erred in terminating their parental rights absent a showing that they failed to comply with the terms of the reunification order for at least one year.

OCGA § 15-11-81 (b) (4) (B) outlines factors for a trial court to use in evaluating whether lack of parental care or control is the cause of the deprivation. Several of those factors are present in this case including mental health disorders on the part of the parents, a history of chronic unrehabilitated drug use on the part of the parents, and emotional and physical neglect of the children at the hands of the parents. OCGA § 15-11-81 (b) (4) (C) provides additional factors for a trial court to *consider* in those situations where the child is not in the custody of the parent whose rights are subject to termination. It provides: "In addition to the considerations in subparagraph (B) of this paragraph; where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, *without being limited to*, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To communicate or to make a bona fide attempt to communicate with the child; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents." (Emphasis

supplied.)

In the present matter, the trial court did mention the appellants' failure to comply with several elements of their most recent reunification plan. While it was inappropriate for the trial court to consider this failure due to the fact that the reunification order had not been in effect for one year, under the facts of this case, the error is not of such magnitude as to require reversal. By the clear language of the statute, the trial court is not limited to looking solely at subparagraph (b) (4) (C)'s factors, and we reject appellants' interpretation that would make compliance with subparagraph (b) (4) (C)'s requirements mandatory.

Not only is the interpretation urged by the appellants contrary to statute, it also establishes an unsound policy. Applying the standard they suggest, a trial court would be foreclosed from evaluating incidents that occur after a reunification plan was formulated. Surely, the trial court should be permitted to consider such events, particularly in cases like this where after the reunification plan was prepared, both parents were returned to jail and their psychological evaluations revealed they had no capacity for meaningful improvement in their parenting skills.

Also, we find no merit in the appellants' assertion that DFACS was required to provide appropriate resources to aid in the reunification of the family for a period of one year after the reunification plan was ordered. The requirement is not found in statute. OCGA § 15-11-41 (b) provides the juvenile court "shall . . . determine as a finding of fact whether reasonable efforts were made by [DFACS] and any other appropriate agencies to prevent or eliminate the need for removal and to make it possible for the [children] to return to the [children's] home." These findings are required in relation to deprivation orders, not termination proceedings.[1] Moreover, no one-year requirement exists in OCGA § 15-11-41 (b). We will not attempt to impose such a requirement by reading OCGA § 15-11-41 (b) together with OCGA § 15-11-81. OCGA § 15-11-81 regarding termination is a complicated statute that references many other statutes. If the legislature had intended it to be read in conjunction with OCGA § 15-11-41 (b), this intent would have been expressly stated.

Moreover, the record in this case reflects that the inaction of DFACS is not an issue. DFACS has made a reasonable attempt to keep this family intact. It has worked with this family intermittently for over 15 years, and has had temporary custody of the children on a number of occasions as both parents were in and out of jail. Despite a

---

[1] The parents did not appeal the determination that DFACS had used its best efforts to prevent or eliminate the need of removing their children when the deprivation order was entered.

long history of effort, DFACS has not been able to improve the home life of these children with their parents. The trial court considered whether additional work with DFACS or the court system would improve the children's lot and determined it would not.[2] These children have suffered for 15 years while DFACS has attempted, without success, to aid the family. The trial court did not err in failing to require DFACS to continue its efforts for another few months to meet the one-year requirement that appellants seek to impose.

Under both the law and the facts of this case, the trial court's decision to terminate parental rights is affirmed.

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur.*

DECIDED NOVEMBER 22, 1995.

*Caesar J. Burch*, for appellants.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Shalen A. Sgrosso, Assistant Attorneys General, Beckmann & Lewis, Leo G. Beckmann, Jr.*, for appellees.

---

[2] In particular, the trial court recounted an emotional visit between the parents and their children shortly after the deprivation order was entered. Two of the children asked their parents for permission to be adopted by others. "The parents tearfully expressed their commitment to change, to be better parents, to stop drinking and using cocaine, and to tend to [the children's] needs." Despite the parents' promises, no changes were made. The drinking and drug abuse continued. As noted by the court: "[i]f ever there was a moment that should have motivated parents to act, this was it. If such an event does not secure change, no court anywhere will have the ability to secure change."