498 S.E.2d 813 (1998)
231 Ga. App. 444
In the Interest of C.W.S. et al., children.
No. A97A2190.
Court of Appeals of Georgia.
March 20, 1998.
*814 Lois W. Gerstenberger, Douglasville, for appellant.
Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Kunz & Associates, Robert A. Kunz, James H. Lewis, Jerry F. Pittman, Douglasville, for appellee.
McMURRAY, Presiding Judge.
This is an appeal from a termination of parental rights based on parental misconduct or inability. OCGA § 15-11-81(b)(4)(A). The mother appeals the juvenile court judgment of termination of her parental rights in two children, C.W.S., born May 18, 1992, and T.M.S., born June 6, 1993. Held:
1. Though the appellant mother presents nine enumerations of error, her brief contains only one continuous argument instead of the separate arguments required by Court of Appeals Rule 27(c)(1). While the failure to present arguments in the format specified by our rules may result in a refusal by this Court to even consider one's argument, in this case we will address appellant's enumerations of error based on what we perceive those arguments to be. Brown v. State, 228 Ga.App. 748, 750(1), 492 S.E.2d 555; John Crane, Inc. v. Wommack, 227 Ga.App. 538(1), 489 S.E.2d 527.
2. "Pursuant to OCGA § 15-11-81(a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is `clear and convincing evidence of parental misconduct or inability.' For purposes of this case, a finding of `parental misconduct or inability' must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81(b)(4)(A). If the first prong of the test is met, the trial court then considers whether the termination of parental rights is in the child's best interests." In the Interest of R. N., 224 Ga.App. 202, 480 S.E.2d 243.
The Douglas County Department of Family & Children Services ("DFACS") first became involved with appellant in connection with an older child with regard to whom appellant's parental rights were terminated in 1995. T.M.S. first came into foster care on May 16, 1994, following hospitalization due to a failure to thrive, and C.W.S. entered foster care on March 20, 1995. On May 10, 1995, both children were adjudicated to be deprived children based on admissions by appellant that the children were deprived, that she was not able to provide proper parental care, guidance, and supervision for the children, and with regard to T.M.S., that the child was undernourished and malnourished.
*815 Caseworkers testified that the home where appellant lived with the children was frequently in disarray, had hygiene problems, was unclean and unsanitary, there were pet feces on the floor, and the home was in deplorable condition and not appropriate for small children. While the children were not left alone, they were left with a number of different persons, including a person with criminal charges of cruelty to children.
The foster mother of T.M.S. testified that she first became involved with this child while the child was hospitalized as a failure to thrive child. The foster mother stated that in visiting T.M.S. on five consecutive days she never saw appellant at the hospital.
The foster parents of C.W.S. described the condition of the child at the time the child was placed in their home. C.W.S. had on overalls which were too small, and no shirt or diaper, was soaked with urine, was not toilet trained, and was very dirty. The child also had skin tears on his feet, other marks and bruises, and could not talk.
A case plan dated June 12, 1995, was approved by the juvenile court. However, appellant did not comply with many of the provisions of the case plan. She did not submit to a psychological evaluation as scheduled (but did comply with this requirement after the petition for termination of parental rights was filed), attend parenting classes, or pay child support as ordered. She had some visits with the children, but did not visit each week as provided in the case plan and some of the visits did not last for the full hour scheduled.
In September 1995, appellant's visits with the children were stopped. This action was taken on the recommendation of a psychologist following his observation of the adverse reactions the children were having to the visits. T.M.S. would sweat profusely, run a temperature, and cling to the caseworker. C.W.S.'s behavior became erratic and aggressive.
An evaluation of appellant by a second psychologist, Dr. Dennis Lloyd Herendeen, revealed an IQ composite score of 48 on the Kaufman Brief Intelligence Test and a full scale active score of 55 on the Shipley Institute of Living Scale. Both of these scores were well inside the mild mental retardation range. Dr. Herendeen testified that such scores would definitely be of concern with regard to ability to provide basic child care. This witness also noted that appellant's score on the Child Abuse Potential Inventory raised concerns about the abuse potential and the safety of the children. Dr. Herendeen opined that appellant would not have the ability to provide proper parenting for her children and stated additional concerns arising from a diagnosis of chronic post-traumatic stress disorder and, under Axis II, a diagnosis of personality disorder not otherwise specified with borderline narcissistic and anti-social features. While stating that it was theoretically possible to work with someone such as appellant to where she might be able to parent her children properly, it would be a time-consuming process with a very low probability of success.
In examining the four parts of the test for parental misconduct or inability, we find as to the first factor that unappealed orders entered by the juvenile court established that the children were deprived within the meaning of OCGA § 15-11-81(b)(4)(A)(i). In the Interest of A.M.B., 219 Ga.App. 133, 134-136, 464 S.E.2d 253. These prior adjudications are corroborated by evidence presented during the termination hearing. Factors two and four were also well established by the evidence presented at the hearing.
Appellant's arguments are directed to factor three, that the cause of the deprivation is likely to continue or will not likely be remedied. The juvenile court has found the absence of proper parental care and control supporting a termination of parental rights based on: "A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-81(b)(4)(B)(i). The resulting deprivation must be shown by clear and convincing evidence to be "likely to continue and likely to cause serious harm to the child." (Punctuation omitted.) In the Interest of D.R.C., 198 Ga.App. 348, 401 S.E.2d 754; In *816 the Interest of E.P.N., 193 Ga.App. 742(2)(c), 748, 388 S.E.2d 903. While appellant argues for a more stringent standard than "likely to continue and likely to cause serious harm to the child" for use in cases where termination of parental rights is sought solely on the basis of mental incapacity, she cites, and we find, no authority supporting her position. The factfinding and weighing of evidence was a task for the juvenile court under the clear and convincing evidence test. There was sufficient clear and convincing evidence to establish that the deprivation was likely to continue and likely to cause serious harm to the child.
3. Additionally, appellant relies upon In the Interest of S.L.W., 221 Ga.App. 509, 511(3), 471 S.E.2d 579 and In the Interest of M.R., 213 Ga.App. 460, 465(2), 444 S.E.2d 866 to support the proposition that DFACS is under a statutory duty to make reasonable efforts to reunite a family for at least one year after a case plan has been formulated for family reunification. Appellant argues that a valid defense to the termination action is provided by DFACS's failure to continue efforts for reunification for the requisite year-long period. However, this contention must fail since the underlying cases cannot be reconciled with the whole court case of In the Interest of A.M.B., 219 Ga.App. 133, 134-136, 464 S.E.2d 253, supra, which rejected the statutory construction stated in these panel cases by holding that no one-year reunification requirement exists nor can be imposed by reading OCGA § 15-11-41(b) together with OCGA § 15-11-81. The holding in In the Interest of A.M.B., 219 Ga.App. 133, 134, 464 S.E.2d 253, supra, was reconfirmed following amendments to these statutes in In the Interest of V.S., 230 Ga.App. 26, 30(2), 495 S.E.2d 142.
The statutory construction stated in In the Interest of M.R., 213 Ga.App. 460, 465(2), 444 S.E.2d 866, supra, must be viewed as having been implicitly overruled by the subsequent and irreconcilable whole court case of In the Interest of A.M.B., 219 Ga.App. 133, 134, 464 S.E.2d 253, supra, and now In the Interest of M.R., 213 Ga.App. 460, 465(2), 444 S.E.2d 866, supra, is explicitly overruled. In the Interest of S.L.W., 221 Ga.App. 509, 511(3), 471 S.E.2d 579, supra, having been decided subsequent to the decision in In the Interest of A.M.B., 219 Ga.App. 133, 134, 464 S.E.2d 253, supra, was incorrect in stating that there is a statutory requirement that DFACS make reasonable efforts to reunite the family for at least a year after a family reunification plan is formulated before there can be a termination of parental rights, and In the Interest of S.L.W., 221 Ga.App. 509, 511(3), 471 S.E.2d 579, supra, is also overruled.
4. The juvenile court properly determined that termination of appellant's parental rights was in the best interest of the children. The same factors which show parental inability may also show that termination would be in the children's best interest. In the Interest of G.K.J., 187 Ga.App. 443(2), 444, 370 S.E.2d 490. Appellant's contention that she could learn adequate parenting skills does not compel a different outcome. "[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of D.I.W., 215 Ga.App. 644, 645(1), 646, 451 S.E.2d 804.
Judgment affirmed.
ANDREWS, C.J., BIRDSONG and POPE, P.JJ., BEASLEY, JOHNSON, BLACKBURN, SMITH, RUFFIN, and ELDRIDGE, JJ., concur.