550 S.E.2d 707 (2001)
250 Ga. App. 152
In the Interest of B.C. et al., children.
No. A01A0476.
Court of Appeals of Georgia.
June 20, 2001.
*708 Mathias Skowranek, for appellant.
Harrison & Harrison, Ann K. Miller, for appellee.
ANDREWS, Presiding Judge.
The mother of B.C. and S.N.C. appeals from the juvenile court's order terminating her parental rights.[1] She claims there was insufficient evidence to support the termination and also claims that it was error to terminate her rights to B.C. without a separate reunification plan. For the reasons which follow, we affirm in part and reverse in part.
Before terminating a parent's rights, a juvenile court, pursuant to OCGA § 15-11-94(a), must employ a two-step procedure. In the Interest of C.L.R., 232 Ga.App. 134(1), 501 S.E.2d 296 (1998).
First, the court shall determine whether there is present clear and convincing evidence of parental misconduct or inability as provided by OCGA § [15-11-94(b)]. Secondly, if there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child. Parental misconduct or inability is found where (1) the child is deprived, (2) the lack of proper parental care or control by the parent in question is the cause of the child's deprivation, (3) the cause of deprivation is likely to continue or will not likely be remedied, and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § [15-11-94(b)(4)(A)].
(Citations and punctuation omitted.) Id.
On appeal, we must determine
whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated.... [T]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of C.L.R., supra.
The evidence in the record, viewed in the light most favorable to the juvenile court's judgment, was as follows. The first deprivation petition was filed on April 1, 1997, by Donna and Harold Walls, who were guardians of the mother. S.N.C. was only three months old at the time, and the mother and her husband were living with the Wallses off and on after S.N.C. was born. In the petition, the Wallses stated that the parents were homeless and unemployed, had no means of caring for the child, and left S.N.C. in the Wallses' care for long periods of time without telling the Wallses where they could be reached.
At the hearing, the Wallses testified that the mother and her husband did not care for the child or provide any of the necessities for her. They also said that the mother was emotionally unstable and had to be hospitalized recently for taking an overdose of medication.
The mother testified at the hearing and said she was unemployed. She admitted that she could not take care of S.N.C. at that time. The juvenile court granted custody of S.N.C. to the Wallses and ordered the mother to visit with S.N.C. on Mondays and Thursdays, to be at the Wallses' home on weekends to visit the child and receive parenting instructions, obtain employment, open a checking account, and enroll in counseling.
The Butlers, S.N.C.'s grandparents, moved to intervene and requested custody. On August 28, 1997, the court heard evidence on the motion. At the time of that hearing, the mother was in jail. She had not complied with the juvenile court's previous order and had already been in jail for a month and a half of a five-month sentence. She was allowed to attend the hearing, and when asked *709 if she had fulfilled the requirements ordered by the court at the last hearing, she replied, "No." The juvenile court then transferred custody of S.N.C. to the Butlers.
After the hearing, the court issued an order finding that Clark had not complied with the requirements set out in the previous order, and adding the additional requirement that she pay $35 a week child support. In addition, the court ordered the Henry County Department of Family & Children Services (DFACS) to develop a reunification plan for the parents.
On September 8, 1999, the court held another hearing and extended the temporary custody order on S.N.C. The court also found that B.C., who was ten months old, was deprived. At that hearing, the mother was again in jail and was not present. The court gave the Butlers custody of B.C. and stated that it would "reserve the issue of visitation and support until [the mother] gets out of jail" and her lawyer had "an opportunity to file for a re-hearing concerning the question of deprivation."
But, on November 8, 1999, only two months later, the Butlers filed a petition to terminate the mother's parental rights to both S.N.C. and B.C. The court held a hearing on the termination petition on January 28, 2000.
At the hearing, Mrs. Butler testified that the mother did not comply with the court's original order that she visit S.N.C. and had made only one of the court-ordered child support payments. With regard to B.C., the evidence was that the mother took care of him for some period of time right after he was born. In November 1998, the father filed for divorce and was given custody of B.C. But, after the divorce, the parents lived together, and the mother again took care of B.C. for a period of time. In July 1999, Mrs. Butler became concerned about the living conditions at the house where the parents were staying and brought B.C. to her home.
The mother testified that she was currently working at Shoney's. She said she worked there a month before her latest baby was born and had just gone back for two days. She claimed she had not talked to or visited the children more because Mrs. Butler made her feel unwelcome or prevented it. She admitted she had been in jail within the last year for violating her probation. She was on probation for stealing a truck and also on a bad check charge. She testified that she had divorced the children's father, who gave up his parental rights, but was now living with him again. She was not sure if he was the father of her latest baby.
The mother admitted that she had not taken care of S.N.C. when she was a baby and avoided her because she was "scared of her." Also, she stated that she did not want to take care of a baby because she wanted to do what people her age were doing. She admitted she had made only one child support payment and also stated that she was unable to pay anything at the time of the hearing. She claimed Mrs. Butler told her that she "didn't want [her] money."
The mother said she and her former husband were now living in a trailer and had a six-month lease. Although she had not opened her own checking account, her former husband had put her name on his checking account. She said there was no money in the checking account at the moment. She claimed she had a psychological evaluation but did not have a copy of the results to give to the court.
The mother also stated that she went to parenting classes the previous November. She acknowledged that she had visited with the children only about twelve times in the past two and a half years, but claimed that Mrs. Butler made it difficult for her to visit or talk to the children on the phone. The mother claimed she had matured and was trying to be a better parent.
The guardian ad litem recommended termination as being in the best interest of the children. He said he believed the mother was trying to turn her life around but he was concerned about her two arrests after the start of the case plan and her failure to comply with the court's order on visitation and child support, among others.
1. We first address the mother's claim that the juvenile court erred in terminating *710 her parental rights to B.C. when no case plan for reunification had been put in place. She points out that her rights were terminated only two months after the deprivation petition for B.C. was filed.
At the time of the deprivation hearing on B.C., the mother was in jail and did not attend. Visitation and support issues were not addressed, and the mother was to "file upon [her] release." But, almost immediately after the deprivation order was entered, the petition for termination was filed. No reunification order or case plan was ever entered.
As the mother points out, OCGA § 15-11-58(a)(2) provides that "reasonable efforts shall be made to preserve and reunify families." In addition, OCGA § 15-11-94(b)(4)(C) provides additional factors for a trial court to consider in those situations where the child is not in the custody of the parent whose rights are subject to termination. One of these factors is whether the parent
has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) to develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) to provide for the care and support of the child as required by law or judicial decree; and (iii) to comply with a court ordered plan designed to reunite the child with the parent or parents.
This Court has held that compliance with subparagraph (b)(4)(C)'s requirements is not mandatory. In the Interest of A.M.B., 219 Ga.App. 133, 136, 464 S.E.2d 253 (1995). In In the Interest of A.M.B., the court terminated the parents rights when the reunification plan had been in place a "few months" less than a year. Id. at 133, 464 S.E.2d 253. This Court held that the juvenile court was not required, under the circumstances in that case, to make "DFACS continue its efforts for another few months" before terminating the parents' rights. Id. at 137, 464 S.E.2d 253. Likewise, in In the Interest of J.W.H., 245 Ga.App. 468, 538 S.E.2d 112 (2000), we again rejected a parent's claim that the juvenile court erred in terminating his rights when the case plan had been in effect for only seven months. Id. at 473-474, 538 S.E.2d 112.
But, in this instance there was no reunification plan ever put in place after B.C. was found to be deprived. Moreover, the order finding him to be deprived was entered on September 22, 1999, and the petition to terminate parental rights was filed on November 3, 1999. Even if the mother had not been in jail at the time of the deprivation hearing, this left virtually no time for her attorney to file any motions requesting visitation or a case plan for reunification.
Accordingly, we conclude that under the mandate of OCGA § 15-11-58(a)(2) the juvenile court was required to set out a plan for reunification and give the mother the opportunity to meet those goals. Because the juvenile court failed to do so, we reverse the juvenile court's order terminating the mother's parental rights to B.C.
2. In her next enumeration, the mother argues the juvenile court erred in terminating her parental rights because there was not sufficient clear and convincing evidence that the deprivation was likely to continue or was in the best interests of the children.[2] She acknowledges that she did not comply with the court's orders or meet the goals set by the court for reunification with S.N.C., but argues that she had made significant progress toward meeting the goals and was trying "to right her ship."
In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent. In the Interest of J.M.C., 201 Ga.App. 173, 174, 410 S.E.2d 368 (1991). In this case, there was not only evidence of past unfitness, there was present unfitness also. Blackburn v. Blackburn, 249 Ga. 689, 692, 292 S.E.2d 821 (1982). The mother acknowledged that she had no money at the time of the hearing, and it was unclear whether there was room for the children in the trailer she had rented. She was living with S.N.C.'s father, but he had already voluntarily surrendered his parental rights to the child.
*711 At the time of the termination hearing, S.N.C. was three years old, and the mother, by her own admission, had never taken any responsibility for her. She had not complied with the court-ordered visitation and had seen the child only sporadically during the three years. She had made only one $35 child support payment. In addition, the mother had been arrested for passing a bad check, stealing a truck, and violating probation. Also, the guardian ad litem had recommended termination.
In light of the mother's failure to make any meaningful progress toward complying with the court-ordered goals for reunification, the juvenile court correctly concluded that there was clear and convincing evidence that the pattern of deprivation was likely to continue and to cause harm to S.N.C.
If the first prong of the test is met, the trial court then considers whether termination of the parental rights is in the child's best interest. In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997). In looking at the second prong, the court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care. In the Interest of J.M.C., supra at 175, 410 S.E.2d 368. The court may also look at the same factors which show parental inability to care for the child to support a finding that termination of parental rights would be in the child's best interest. In the Interest of G.K.J., 187 Ga. App. 443, 444, 370 S.E.2d 490 (1988). The same evidence showing parental misconduct may, and in this case does, satisfy this requirement. In the Interest of C.L.R., supra at 138, 501 S.E.2d 296.
Accordingly, S.N.C.'s need for a stable home environment, the mother's past unfitness to care for her, and the mother's failure at the termination hearing to show any meaningful compliance with the court's reunification requirements were sufficient clear and convincing evidence that termination was also in the best interest of the child. In the Interest of J.M.C., supra; In the Interest of T.R.G., 162 Ga.App. 177, 290 S.E.2d 523 (1982).
Judgment affirmed in part and reversed in part.
ELDRIDGE and MILLER, JJ., concur.
NOTES
[1] The children's father had already surrendered his parental rights.
[2] In light of our holding in Division 1, we address this issue only as it applies to S.N.C.