A98A1840. IN THE INTEREST OF S. J. C. et al., children.
(507 SE2d 226)

BLACKBURN, Judge.

Appellant, the biological mother of S. J. C., M. E. M., J. K. G., and L. C. G., appeals the juvenile court's termination of her parental rights, claiming that the evidence was insufficient to support the termination.[1] The appellant also contends that the juvenile court failed to make reasonable efforts to reunify her family. For the reasons discussed below, we affirm the decision of the juvenile court.

On appeal, we must determine "whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. . . . This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm

---

[1] The biological fathers of appellant's children surrendered their parental rights and are not parties to this appeal.

unless the appellate standard is not met." (Punctuation omitted.) *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

1. On September 2, 1993, the juvenile court of Cherokee County determined that appellant's children were deprived, and it granted custody to appellant's mother. The juvenile court found that appellant had abandoned her children with her mother; that appellant provided her children with inadequate food, clothing, and hygiene; that appellant's children were not properly supervised or nurtured; that the educational needs of the children were not being met; and that appellant was addicted to drugs.[2] Appellant's mother retained custody of the children until May 10, 1996, when the juvenile court again found that the children were deprived under their grandmother's care and granted temporary custody for a period of 18 months to the Department of Family & Children Services (DFACS). Multiple case plans were then developed by DFACS from June 10, 1996 through November 3, 1997.

Although appellant was not included in the earlier case plans for reunification of the children with their grandmother because appellant was not the legal guardian of the children, on January 15, 1997, Jonelle Courson, the children's caseworker, met with appellant to discuss the third case plan developed by DFACS which recommended cessation of reunification services.[3] This plan directed appellant to submit to a psychological evaluation, pay child support, and properly provide for the children's financial and emotional needs. Appellant did not comply with these directives. In DFACS' fourth and final case plan, termination of appellant's parental rights was recommended. Thereafter, the juvenile court terminated such rights.

"Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is 'present clear and convincing evidence of parental misconduct or inability.' OCGA § 15-11-81 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). In determining whether a child is without proper parental care and control, a court may consider, among other things, 'conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship[.]' . . . OCGA § 15-11-81

---

[2] Some of appellant's children require treatment for fetal alcohol syndrome.

[3] During the two years that the children were in DFACS' custody, DFACS was able to ascertain appellant's whereabouts for a period of only approximately two months.

(b) (4) (B) (iii), (iv). In the second prong of the test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child." *In the Interest of V. S.*, 230 Ga. App. 26, 27 (495 SE2d 142) (1997).

There is no question that appellant's children were deprived. First, the record contains previous orders of the juvenile court which include findings of such deprivation, and, in the termination proceedings, the court took judicial notice of such orders. See *In the Interest of J. L. Y.*, 184 Ga. App. 254 (1) (361 SE2d 246) (1987). Second, the clear and convincing evidence adduced at the termination hearing supports a finding of deprivation, as there was testimony that the children are delayed in their educational and emotional development, that they may have been subject to sexual abuse, that their financial needs were not being met, that appellant had a history of drug addiction, and that appellant had been incarcerated for felony convictions. See OCGA § 15-11-81 (b) (4) (B). In addition, there was evidence that appellant had failed to communicate with her children in a "meaningful, supportive, caring manner" for more than a year prior to the filing of the petition to terminate her parental rights. See OCGA § 15-11-81 (b) (4) (C).[4]

The juvenile court had sufficient evidence to determine that appellant's inability to adequately care for her children was the cause of their deprivation. Appellant abandoned her children with their grandmother, failed to stay in contact with DFACS, and failed to comply with case plans developed by DFACS while the children were in its custody. Moreover, appellant, who had a history of abusing drugs and alcohol to the detriment of her children, was incarcerated for multiple crimes, including, among others, theft by taking, burglary, and card theft. Appellant's conduct provides clear and convincing evidence that the children's deprivation originated from her neglectful child rearing and inappropriate behavior.

The evidence also supports the finding by the trial court that the deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. . . . The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their mother." (Punctuation omitted.) *In the Interest of R. N.*, supra at 204 (1) (c).

---

[4] Indeed, it appears that the parent-child relationship became so non-existent that appellant's children never even inquired about her in her absence.

The record also supports the finding that the children are likely to be harmed by the continued deprivation. All of the children have suffered physical, emotional, and developmental setbacks while under their mother's care and under their grandmother's care after being abandoned by their mother. When combined with the mother's pattern of neglecting her children's needs in the past, including appellant's failure to comply with DFACS' case plans, the evidence provides clear and convincing proof that reuniting these children with appellant would cause harm to them.

Finally, the record supports a finding that termination of appellant's parental rights would be in the best interests of her children. The same factors which show a parent's inability to properly raise her children may also provide proof that termination of parental rights would be in the children's best interests. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). Although appellant now claims that she will be a proper mother, no change in the outcome of this case is mandated. "[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (451 SE2d 804) (1994).

2. In her second enumeration of error, appellant contends that the juvenile court erred in terminating her parental rights because DFACS failed to make reasonable efforts to reunite her family pursuant to OCGA §§ 15-11-41 (b) and 15-11-81 (b) (4) (C). We disagree.

"[W]e find no merit in the appellant['s] assertion that DFACS was required to provide appropriate resources to aid in the reunification of the family for a period of one year after the reunification plan was ordered. The requirement is not found in statute. OCGA § 15-11-41 (b) provides the juvenile court 'shall . . . determine as a finding of fact whether reasonable efforts were made by (DFACS) and any other appropriate agencies to prevent or eliminate the need for removal and to make it possible for the (children) to return to the (children's) home.' These findings are required in relation to deprivation orders, not termination proceedings. Moreover, no one-year requirement exists in OCGA § 15-11-41 (b). We will not attempt to impose such a requirement by reading OCGA § 15-11-41 (b) together with OCGA § 15-11-81. OCGA § 15-11-81 regarding termination is a complicated statute that references many other statutes. If the legislature had intended it to be read in conjunction with OCGA § 15-11-41 (b), this intent would have been expressly stated." (Footnote omitted.) *In the Interest of A. M. B.*, 219 Ga. App. 133, 136 (464 SE2d 253) (1995). Although this ruling was issued prior to the amendment of OCGA §§ 15-11-41 and 15-11-81 in 1996, such amendments do not affect the efficacy of this statement.

Moreover, OCGA § 15-11-41 (b) (1) provides that "[i]n determin-

ing reasonable efforts [for reunification] to be made with respect to a child . . . and in making such reasonable efforts, the child's health and safety shall be the paramount concern." In addition, OCGA §§ 15-11-41 (b) (4), 15-11-41 (c), and 15-11-41 (g) confirm that reunification attempts are not required in every case. For example, OCGA § 15-11-41 (c) provides: "Within 30 days of the date of removal of the child from the home and at each subsequent review of the disposition order, [DFACS] must submit a written report to the court which shall either include a case plan for a reunification of the family or include a statement of the factual basis or bases for determining that a plan for reunification is *not* appropriate." (Emphasis supplied.) In turn, OCGA § 15-11-41 (g) (2) indicates that a determination that reunification services would be detrimental may be based on the same grounds for termination of parental rights under OCGA § 15-11-81. Based on these sections of OCGA § 15-11-41, reunification services need not be extended in every case, as appellant contends.

Finally, the record in this case shows that DFACS made numerous attempts to develop reunification plans for this troubled family. Thus, appellant's contention that DFACS failed to provide appropriate reunification services is meritless.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 22, 1998.

*Howard & Delaney, Stephen A. Delaney, Gregory A. Hicks, James K. Luttrell*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, William C. Joy, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Dyer, McElyea & Thompson, Dana M. Thompson, David L. Cannon*, for appellees.