A99A1525. IN THE INTEREST OF N. B. et al., children.
(521 SE2d 47)

JOHNSON, Chief Judge.

The mother of N. B. and R. B. appeals from a juvenile court order terminating her parental rights.[1] She contends the trial court erred in determining that she failed to comply with case goals, that the cause of the children's deprivation is likely to continue or will not likely be remedied, and that there was no suitable alternative placement for the children within the family. We affirm the trial court's order with respect to the mother's first two arguments and find the trial court properly terminated the mother's parental rights. However, we reverse and remand the case with direction that the juvenile court, in conjunction with the Department of Human Resources,

---

[1] Although the children's father was a party to the notice of appeal filed in the Henry County Juvenile Court, he subsequently informed the court that he was employed and no longer needed the assistance of the court-appointed attorney. Following a hearing on the indigent status of the parents, the trial court terminated the services of the court-appointed attorney on behalf of the father. Since the father has not paid appeal costs or otherwise participated further in this appeal, his appeal, if any exists, must be treated as having been abandoned.

evaluate the possibility of placing the children with their paternal grandfather.

On appeal, we view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated; we do not weigh the evidence and must defer to the trial judge as the factfinder. *In the Interest of D. L. N.*, 234 Ga. App. 123, 125 (2) (506 SE2d 403) (1998). We find no error and affirm the decision of the juvenile court.

The decision to terminate parental rights involves a two-step process. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability. Parental misconduct or inability is found when the child is deprived, the cause of the deprivation is lack of proper parental care or control, the cause of the deprivation is likely to continue or will not likely be remedied, and the continued deprivation will cause or is likely to cause serious harm to the child. OCGA § 15-11-81 (b) (4) (A).

Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, it must consider whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81 (a). See *In the Interest of B. D.*, 236 Ga. App. 119 (511 SE2d 229) (1999).

Viewing the evidence in favor of the juvenile court's findings, the record shows that one-year-old N. B. and newborn R. B. were removed from the mother's custody shortly after R. B.'s birth on August 27, 1996, because R. B. tested positive for cocaine and marijuana at the time of his birth. The mother also tested positive for cocaine and marijuana and was homeless and transient. At the September 10, 1996 deprivation hearing, the mother stipulated that N. B. was deprived, and temporary legal custody of both children was transferred to the Henry County Department of Family & Children Services (the "Department").

Two caseworkers attempting to work with the mother toward reunification testified that the mother failed to comply with the requirements of her case plan. The mother did not obtain a drug and alcohol assessment through a state-approved treatment facility, as required by the plan. She provided no documentation to show she attended AA and NA meetings twice per week for at least six months. She failed to submit to and pay for random drug screens. She never obtained a psychological evaluation from an approved psychologist. She never completed a parenting skills class. She failed to secure affordable housing for herself and the children. In fact, she resided in seven different residences over the two-year period when her chil-

dren were in foster care. She paid no child support the entire time the children were in foster care. She attended only 15 of the 27 scheduled visits with her children. At the time of the termination hearing in December 1998, the mother had last seen the children in June 1998. Moreover, the mother was incarcerated on multiple occasions while her children were in foster care and was incarcerated at the time of the termination hearing.

At the termination hearing, the mother conceded that she failed to accomplish everything the Department had asked her to do. She admitted to having a drug dependency and acknowledged she would be incapable of properly parenting N. B. and R. B. for an additional nine months. She conceded that R. B. did not recognize her.

As a result of the mother's failure to comply with the case plan goals and to remedy her problems with drug abuse that caused her children to be removed originally from her custody, the juvenile court determined that N. B. and R. B. were deprived; the lack of proper parental care and control by the mother was the cause of the deprivation; the conditions and causes of deprivation were likely to continue and not be remedied by the mother; the continued deprivation would cause serious physical, mental, emotional or moral harm to N. B. and R. B.; and there was no suitable alternative placement for the children within the family.

1. The mother does not argue that the children are not deprived, but merely contends the evidence was insufficient to show that (1) she failed to comply with her case plan goals, and (2) the cause of the deprivation is likely to continue or will not likely be remedied. These contentions are without merit.

The mother's first argument, regarding failure to comply with her case plan goals, centers around the fact that she completed a drug screen as ordered, but her caseworker obviously did not receive the results. Based on the other goals which the caseworker testified were not met, as well as the mother's admission that she failed to accomplish everything the Department asked her to do, we find clear and convincing evidence that the mother failed to comply with or achieve the goals in the court-ordered case plans.

The evidence is also sufficient to support the court's finding that the continued deprivation of the children is likely to continue or will not likely be remedied. First, evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their mother. See *In the Interest of B. D.*, supra at 121 (2). The past conduct of the mother in this case certainly justifies such a finding. Second, the record is replete with examples of the mother's failure to cooperate with the Department's case plan. Moreover, she was incarcerated at the time of the termination hearing and admitted she still has a drug dependency.

While the mother promises to change her life, this court has repeatedly recognized that "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of S. J. C.*, 234 Ga. App. 491, 494 (1) (507 SE2d 226) (1998). Based on the mother's past behavior, the length of time her problems have persisted, her failure to comply with the case plan goals, and her own admissions, the juvenile court properly concluded that the deprivation is likely to continue or will not likely be remedied.

2. We agree with the mother's argument that the juvenile court erred in finding there was no suitable alternative placement for the children within the family.

The issue of placement with relatives is one to be made by the juvenile court, together with the Department, following the juvenile court's decision to terminate parental rights. OCGA § 15-11-90 (a); *In the Interest of D. T.*, 221 Ga. App. 328, 330 (2) (471 SE2d 281) (1996). According to the statute, "[a]n exhaustive and thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement." OCGA § 15-11-90 (a) (1).

In the present case, the caseworker testified that she did not investigate the paternal grandfather as a possible suitable relative placement for the children because he never contacted the Department or expressed any interest in the children during the entire time they had been in foster care. However, while testifying about his son's employment and suitability as a parent during the trial of this case, the paternal grandfather stated that he would like to be considered for placement for his grandchildren. He admitted he had not contacted the Department in order to indicate his interest in serving as a placement resource for the children during the time they were in foster care. Nonetheless, while this may be considered as one factor in the Department's evaluation regarding the paternal grandfather's suitability for relative placement, it does not negate the Department's duty to conduct such an evaluation following the juvenile court's termination of the parents' parental rights. The juvenile court's finding that no suitable relative existed for placement was premature pending an evaluation of the paternal grandfather's suitability.

Thus, while we affirm the trial court's termination of the mother's parental rights, we reverse the juvenile court's decision that there is no suitable alternative placement for the children within the family. We remand the case to the juvenile court with direction that the juvenile court, in conjunction with the Department of Human Resources, evaluate the possibility of placing the children with their paternal grandfather. In so doing, we do not express any belief that

the children must or should be placed with the paternal grandfather.

*Judgment affirmed in part and reversed in part and case remanded with direction. Pope, P. J., and Smith, J., concur.*

DECIDED JULY 15, 1999 —
RECONSIDERATION DENIED JULY 28, 1999.

*William D. Patten, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Robert E. Hall, James T. Chafin III*, for appellee.