534 S.E.2d 466 (2000)
243 Ga. App. 778
In the Interest of D.H. et al., children.
No. A98A1162.
Court of Appeals of Georgia.
May 3, 2000.
*467 Sherriann H. Hicks, Duluth, Christopher T. Adams, Lawrenceville, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Cheeley & Joyner, John P. Cheeley, Duluth, Debra R.F. Stone, Bonaire, for appellees.
James B. Outman, amicus curiae.
ANDREWS, Presiding Judge.
Tam Hoang Morrow appeals from the January 22, 1998 judgment terminating her parental rights to her three children, D.H., J.H., and T.M. That judgment also terminated the parental rights of Jeffrey Morrow, the biological father of T.M.[1] This case was originally docketed in this Court in the April 1998 term. Both Tam Morrow and Jeffrey Morrow were parties to that appeal. Pursuant to the motion of the Georgia Department *468 of Human Resources, the appeal was dismissed by opinion of June 22, 1998, and the remittitur issued on July 24, 1998.
On June 7, 1999, Tam Morrow filed her Notice to Seek Certiorari. By order of October 15, 1999, the Supreme Court granted the writ and remanded the case to this Court for consideration of the merits of Tam Morrow's appeal. The remittitur having been recalled, we now consider the merits of her appeal.
By order of August 30, 1995, D.H. (male, DOB June 25, 1988), J.H. (female, DOB December 2, 1990), and T.M. (female, DOB November 8, 1994) were found deprived. The following factual findings were the cause for this finding: D.H. and J.H., who were placed in temporary custody of the Department of Family & Children Services on August 7, 1995, reported to a child sexual abuse investigator and to their foster mother that Jeffrey Morrow ejaculated on J.H.'s stomach. D.H. was sent to take a bath by Jeffrey Morrow when this occurred, but he witnessed it. J.H., then four years old, stated that Morrow "tee tee'd white" on her. The children testified repeatedly and consistently to these facts. The children also said that Tam Morrow observed the incident and that Jeffrey Morrow made J.H. rub his penis with lotion, which he hid behind the couch when confronted by Tam Morrow. When confronted by her, Jeffrey Morrow and she fought. Tam Morrow then reported her observation to nutritionist Milhous at Norcross Health Clinic, and they filled out a form to report the incident. Tam Morrow then changed her mind and left the office with the form. No significant language barrier was noted by Milhous.[2] The next day, Tam Morrow spoke in her native tongue with a Vietnamese worker at the clinic three separate times by phone and reconfirmed that the abuse occurred. Tam Morrow asked this worker for medication for the father's sexual deviance but was told that the behavior was not a medical condition, but a mental one. Jeffrey Morrow admitted to the investigator that he and his wife left the children at home alone on various occasions.
In that August 1995 order, the parents were ordered to cooperate with DFCS, to obtain and maintain stable employment and living arrangements and to follow any other recommendation made by DFCS, including but not limited to individual and family counseling, anger management for Jeffrey Morrow, and parenting and nurturing skills classes. They were also ordered to keep DFCS informed of a current address and phone number. Tam Morrow was ordered to find a duly qualified Vietnamese-speaking psychiatrist with whom to begin counseling, and all parties were to agree on a child sexual abuse counselor for Jeffrey Morrow. Both parents were to sign releases allowing DFCS to obtain information from their counselors. Jeffrey Morrow was to have no contact with D.H. and J.H.
Jeffrey Morrow was evaluated in November 1995 and March 1996 by Dr. Abel who determined that the psychophysiological assessment of Morrow's sexual interests revealed that he was responsive to slides of three- and four-year-old females. Morrow was also found to have failed a polygraph examination regarding any sexual activity with his children and his attraction to a child under the age of 15.
Tam Morrow was evaluated by Dr. Runo in February 1996, reflected in his report of March 11, 1996. Dr. Runo found her to be very dependent on Jeffrey Morrow and fearful of losing that support and security. It was again recommended that she undergo individual therapy.
On at least two occasions in 1996, despite the court's order, Jeffrey Morrow attempted to have contact with D.H. and J.H., once by going to their school, and once by barging into the DFCS facility when Tam Morrow was going to meet with the children. On that occasion, Jeffrey Morrow pushed past the caseworker and the foster mother, who was holding T.M. in her arms, went into the room with J.H., tried to shut the door, and touched her on the arm before the case-worker could get him out.
*469 In January 1997, as a result of having left the children alone for a period of time without parental care and control, one of the reasons for the finding of deprivation, Jeffrey and Tam Morrow pled guilty to three counts each of misdemeanor contributing to the deprivation of a minor and were sentenced to probation for three years.[3]
Additionally, in January 1997, Jeffrey Morrow pled guilty to sexually assaulting a minor, a female employee of his pizza restaurant. Previously, while in the Army, Jeffrey Morrow had been demoted for masturbating in front of a female soldier.
The termination hearing began on August 25, 1997, pursuant to the petition filed by DFCS in February 1997. At the conclusion of that hearing, the parents requested a continuation of the matter for four to six months to see if there was any feasible way to reunify Tam Morrow with her children. Counsel for Tam Morrow advised the court that Jeffrey Morrow and she had separated, although no decision had been made on the permanency of the separation. The hearing was suspended under the following provisions, applicable to Tam Morrow:
1. The mother and father shall live separate and apart from each other and have no absolutely no contact between them;... 3. The mother, [D.H.] and [J.H.] shall attend family therapy with Dr. Bush every other week; 4. The mother shall attend weekly individual therapy at the parents' expense; 5. The mother shall obtain and maintain stable living arrangements and employment sufficient to support the children; 6. Visitation between the mother and the children shall occur twice per month at the Department; ... 9. The parents shall attend all therapy and counseling sessions, actively participate in same, follow the recommendations of their therapists and counselors and release all information to all parties.
On September 2, 1997, counsel for Tam Morrow sent her a letter giving her the name of a Vietnamese-speaking counselor who had been located by the caseworker. The letter directed her to contact the counselor and begin her therapy. The letter also instructed her "not to have any contact at all with Jeff Morrow. If the Judge finds out that you have seen him or talked to him at all then we will be brought back into court and she will terminate your parental rights. There are no second chances and no excuses." The letter was copied to Tam Morrow's Vietnamese interpreter who was asked to contact Morrow and read the letter to her in Vietnamese.
The hearing was resumed on October 7, 1997. During that hearing, the DFCS presented evidence that, despite the previous court order and her agreement to live separately from Jeffrey Morrow, Tam Morrow had been cohabiting with him. A private investigator documented that both parents' cars were at Tam Morrow's apartment, backed into parking spaces so that their license tags were obscured, on September 11, 16, 23, 24, and 29. The investigator also videotaped Jeffrey Morrow leaving the apartment the evening before the investigator testified. On September 25, during her visitation with the children, Tam Morrow was asked by Crawford, her caseworker, if she had had contact with Jeffrey Morrow and she denied any.
Dr. Bush, a child psychologist, had previously treated D.H. and J.H. She testified at the August hearing that Tam Morrow had difficulty acknowledging her children's feelings and had become angry when J.H. had drawn a family picture which did not include Jeffrey Morrow.
Dr. Bush met with Tam Morrow, D.H., and J.H. on September 8 and 22. During both sessions, both children reiterated to Tam Morrow that the molestation had occurred. Morrow indicated for the first time that she believed what J.H. told her, but she also stated that she believed Jeffrey Morrow when he denied having molested J.H.
While Jeffrey Morrow did finally begin counseling with M.G. Counseling Services in 1997, this counseling dealt only with sexual *470 addiction and was not addressed to child sexual abuse, which Jeffrey Morrow continued to deny.
Although, as set out above, the case-worker had located a Vietnamese-speaking counselor for Tam Morrow and she had been instructed by her lawyer on September 2, 1997, to go for counseling, as of the October hearing she had seen the counselor only once. Tam Morrow acknowledged that the therapist told her to divorce Jeffrey Morrow but said "I was thinking I have done so many things that the court have told me and they still haven't given me back my children so what's the point to get divorced." Also, Morrow acknowledged that she did not have her own apartment yet.
Tam Morrow's sole enumeration of error is that the trial court erred in terminating her rights because there was no present clear and convincing evidence that the deprivation of these children would continue in the future or that the termination was in the best interests of the children. OCGA § 15-11-81(b)(4)(A)(iii), (iv).
On appeal, this Court must determine:
whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.... This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met. [Cit.]
In the Interest of S.J.C., 234 Ga.App. 491-492, 507 S.E.2d 226 (1998).
It is undisputed, based on the prior unappealed court orders of which the juvenile court took judicial notice during the termination proceedings, that the children are deprived. See, e.g., In the Interest of S.J.C., supra at 493(1), 507 S.E.2d 226; In the Interest of T.B.R., 224 Ga.App. 470, 473(1)(a), 480 S.E.2d 901 (1997).
Despite Tam Morrow's argument to the contrary, the court, from the initial 1995 order on, made clear that the allegation of child sexual abuse by Jeffrey Morrow of J.H. in the presence of D.H. had been proven to the court by clear and convincing evidence and was one basis for the deprivation finding.
As of the October 1997 hearing, despite the court's repeated findings, Jeffrey Morrow remained an unadmitted and untreated child sexual abuser and an admitted sexual addict, and Tam Morrow continued to believe him with regard to his denials of child sexual abuse, contending that all the reports of J.H.'s molestation had been fabricated. Although at the October hearing, for the first time in over two years, Tam Morrow also indicated that she believed J.H. and that the abuse might have occurred, this failure of recognition by Tam Morrow of Jeffrey Morrow's problems and its effect on her and the children is properly considered by the trial court in determining whether the abuse is likely to continue, particularly when the fabrication of a separation of the Morrows and Tam Morrow's lying about it to authorities are considered. In the Interest of B.H., 190 Ga.App. 131, 132, 378 S.E.2d 175 (1989). As stated therein,
the reason the mother was deprived of custody was her refusal to protect the child by even considering the possibility that the [step]father could have abused the child and her consequent unwillingness to remove the child from the danger presented by living with the [step]father. The juvenile court's primary responsibility is to consider and protect the welfare of children whose well-being is threatened. OCGA § 15-11-1(1). This is so regardless of specific fault on the part of the mother. [Cit.] Accordingly, in this instance, after finding there was clear and convincing evidence the [step]father had molested [J.H. in the presence of D.H.], the trial court did not abuse its discretion by considering the evidence and deciding it had no choice but to protect the [children] by removing custody from the mother as well. [Cit.]
Id. at 133(1), 378 S.E.2d 175.
Molesting one child in the presence of another also provides clear and convincing evidence that the deprivation of the child witnessing the abuse is likely to continue and cause harm to that child. In the Interest of *471 R.E.M., 207 Ga.App. 178, 179(2), 427 S.E.2d 512 (1993).
Because Tam Morrow had only once seen the counselor first ordered for her in August 1995 and had only recently evidenced any willingness to perhaps believe her children's reports of abuse, the trial court was also authorized "to assign less weight to assertions of sudden parental fitness based on belated efforts to comply with a case plan after termination proceedings begin. [Cit.]" In the Interest of J.S., 232 Ga.App. 876, 880(1), 502 S.E.2d 788 (1998). "The decision as to [the children's] future must rest on more than positive promises which are contrary to negative past fact. [Cit.]" (Punctuation omitted.) In the Interest of D.W., 235 Ga.App. 281, 283, 509 S.E.2d 345 (1998).
The record also supports a finding that termination of Tam Morrow's parental rights would be in the best interests of her children. The same factors which illustrate a parent's inability to properly parent her children may also provide proof that termination of parental rights will be in the children's best interests. In the Interest of S.J.C., supra at 494(1), 507 S.E.2d 226. Here, Tam Morrow has repeatedly shown the court that her primary loyalty is to Jeffrey Morrow, whose parental rights to T.M. have been severed and who abused J.H. in D.H.'s presence. Given the chance to show the court that she could put her children first, she nonetheless continued to live with Jeffrey Morrow and attempted to mislead the court. She also failed to pursue the therapy which might have enabled her to rectify the situation.
Also, in making the determination of the children's best interests, the court considers the children's "physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81(a)." In the Interest of N.B., 239 Ga.App. 336, 337, 521 S.E.2d 47 (1999).
Judgment affirmed.
SMITH, P.J., and BARNES, J., concur.
NOTES
[1] The putative biological fathers of D.H. and J.H. were not involved in the proceedings below.
[2] Tam Morrow is Vietnamese and has been supplied with an interpreter throughout these proceedings.
[3] The court issued an order continuing the temporary custody of the DFCS for two years based on these facts.