A01A1767. IN THE INTEREST OF B. M., a child.

(556 SE2d 883)

SMITH, Presiding Judge.

J. M., the biological father of B. M., appeals an order terminating his parental rights. He contends that the juvenile court inappropriately considered certain evidence, improperly allowed allegations, information, and argument into evidence, misapplied the doctrine of collateral estoppel, and violated his rights to due process. Having determined that all of these contentions are utterly devoid of merit, we affirm.

In considering a challenge to the sufficiency of the evidence in a

---

[2] *Blackwell v. State*, 237 Ga. App. 896, 897-898 (516 SE2d 787) (1999).

[3] *Mann v. State*, 273 Ga. 366 (541 SE2d 645) (2001).

parental termination of rights case, the evidence must be reviewed in the light most favorable to the juvenile court's determination. *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000). Further, when the evidence shows that any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost, we defer to the juvenile court's factfinding. Id.

When so reviewed, the evidence shows that J. M. has a lengthy and extensive history of sexual misconduct and violence. See *In the Interest of D. H.*, 243 Ga. App. 778 (534 SE2d 466) (2000) (providing details of prior incidents of child sexual abuse perpetrated by J. M. against other children). As a result of his previous misconduct and abuse, J. M. forfeited all parental rights to B. M.'s sister and two half-siblings. In affirming the termination of J. M.'s parental rights, this court noted that "the allegation of child sexual abuse by J. M. of J. H. in the presence of D. H. had been proven to the court by clear and convincing evidence and was one basis for the deprivation finding."[1] Id. at 782.

J. M.'s parental rights to B. M. were not adjudicated in the earlier case. B. M., however, came into emergency state custody in early October 1998 when he was about 18 months old. The precipitating event occurred when B. M.'s mother reported to the Department of Family & Children Services ("DFACS") and to law enforcement authorities that she saw J. M. fondling B. M. while he watched a pornographic video. She also reported that J. M. threatened to kill her and B. M. When T. H. M., the mother, attempted to retract her allegations, charges that were consistent with J. M.'s prior sexual misconduct with their other young children, she was prosecuted for making a false report of a crime.

DFACS implemented a case plan for reunification with B. M.'s mother. To safeguard the welfare of B. M., the case plan prohibited T. H. M. from allowing J. M. to have contact with B. M. In a May 1999 order, the juvenile court determined by clear and convincing evidence that B. M.'s deprivation was caused by "alleged sexual abuse, domestic violence, failure to protect the child and instability." While noting that "the father is incarcerated," the juvenile court nevertheless ordered T. H. M. to "conclude her relationship with the father, have no contact with him and abide by the terms of the family violence order." In July 1999, the parents obtained a divorce.

In direct violation of a court order and a DFACS case plan, T. H. M. took B. M. with her to J. M.'s home on numerous occasions. In April 2000, T. H. M. and J. M. resumed living together with each

---

[1] The two older children, D. H. and J. H., reported that J. M. had "tee tee'd white" onto J. H.'s stomach and that J. M. had forced J. H. to rub his penis with lotion. J. H. was age four when she was victimized. *In the Interest of D. H.*, supra, 243 Ga. App. at 779.

paying half the rent. During the termination proceeding, when asked, "just tell us why it was that you violated the Court's order?" J. M. responded, "Well, that's my son. That's my son, you know, you just — the temptation is overwhelming. You know, some things you just can't say no to."

A DFACS caseworker, who had also functioned as the case manager for the action involving B. M.'s sister and two half-siblings, was responsible for developing a reunification plan for the mother. The caseworker testified that the divorce was just a "charade." She testified that DFACS chose not to reunify J. M. with this child because of J. M.'s criminal record, the prior termination of J. M.'s parental rights pertaining to the other children, and the prior allegations of sexual abuse involving J. H. A DFACS supervisor testified that on one occasion T. H. M. displayed visible signs of a beating and appeared "badly bruised." When asked about the bruises, T. H. M. disclosed that J. M. had beaten her and threatened to kill her and the DFACS supervisor. Although J. M. admitted that he had, in fact, battered T. H. M. by hitting her "in the eye, in the head," J. M. explained that he had been distressed and missed his son and that "[s]he [was giving] me a lot of trouble." J. M. also admitted being convicted for the sexual battery of a 17-year-old female.

After the hearing, the juvenile court entered a well-reasoned, highly detailed order that terminated the parental rights of J. M. and T. H. M. and incorporated a protective order therein. Taking judicial notice of prior unappealed orders, the juvenile court found B. M. to be deprived. The court stated that J. M. is "a known, unrehabilitated child molester and sexual deviant who molested this child." The court noted:

> The parents' treatment or neglect of this child and his siblings and half-siblings represents egregious conduct or evidence of past egregious conduct of the parents toward the child or toward other children of a physically, emotionally, or sexually cruel or abusive nature. In separate cases, the Court previously found that both this child and his half-sister were molested, which is clearly egregious, cruel and abusive. The Court steadfastly maintains these findings of fact and conclusions of law.

Primarily due to the mother's abysmal failure to protect B. M., her allegiance to an "unfit father" who was a repeat "sex offender," and her inability to comply with the DFACS case plan, the juvenile court severed her parental ties to B. M. The juvenile court also found:

> Having been acquainted with the Court since August 1995, the parents have shown a pattern of deception, a course of

misconduct and instability, unaccountability, bent of mind, sexual deviance and a refusal to rehabilitate themselves. Short of a blind reunification, no truer harbinger of continued deprivation exists than this Court's five-plus year history with the parents. It is without question that the deprivation would indeed continue and probably worsen.

By law, the termination of parental rights requires compliance with a two-step process. OCGA § 15-11-94 (a); *In the Interest of B. L. S.*, 239 Ga. App. 771, 774 (521 SE2d 906) (1999). First, there must be a finding of parental misconduct or inability which requires clear and convincing evidence that (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or unlikely to be remedied; and (4) the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If these four factors are satisfied, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94 (a); *In the Interest of L. H.*, 236 Ga. App. 132, 133 (1) (511 SE2d 253) (1999). Here, the findings entered by the juvenile court fully complied with these statutory requirements.

1. Listing 17 factual findings, J. M. takes issue with each of those findings, contending that they are either untrue or not in evidence. Six of the seventeen findings we decline to consider because they pertain solely to T. H. M., who is not a party to this appeal. Among the other findings that J. M. now seeks to dispute, he claims that he is "not an admitted sexual deviant and judicially determined child molester."

The juvenile court's findings were supported by numerous exhibits entered into evidence. The State offered 16 exhibits at the termination hearing, and all 16 were admitted in evidence without objection. Among these exhibits were the termination order pertaining to the three other children, four review orders, a mutual restraining order, two consent orders, and an emergency order. Upon admitting this evidence, the juvenile court apprised all parties of its intention to take judicial notice of the previous orders and to consider them as evidence and as part of the record. Both parents were represented by counsel, and no objection was made. Having posed no objection, J. M. waived any issue as to the admissibility of this evidence including any objection on other grounds. See *Ross v. State*, 231 Ga. App. 793, 801 (14) (499 SE2d 642) (1998). Any issue relating to the earlier findings in prior orders by the juvenile court was waived. See *Hunter v.*

*State*, 202 Ga. App. 195, 197 (3) (413 SE2d 526) (1991). Even assuming that in its final order the juvenile court took notice of some facts not entered in evidence, such as allegations that J. M. engaged in sexual misconduct while in military service and that J. M. is a "confirmed sex offender" or "an admitted sexual deviant," the juvenile court's conclusion that termination was warranted and in the best interest of the child was amply supported by other evidence that was properly admitted.[2] See *In the Interest of S. C. M. H.*, 238 Ga. App. 159, 165 (5) (517 SE2d 598) (1999).

2. J. M. contends that the juvenile court incorporated information, allegations, argument, and evidence into its order that violated T. H. M.'s constitutional right to due process. T. H. M. is not a party to this appeal, and J. M. lacks standing to assert that T. H. M.'s rights were violated.

3. J. M. asserts that the juvenile court improperly used and applied the doctrine of collateral estoppel in its order. He claims that the juvenile court found B. M. deprived by relying upon a false charge fabricated against him by T. H. M. He points out that he was never convicted of molesting B. M.

Evidence of past parental misconduct or other pertinent misconduct may be considered in deciding whether a child is deprived. Regardless of whether J. M. sexually abused B. M., the record contains ample other evidence from which the juvenile court could have found clear and convincing proof of parental misconduct and unfitness, including evidence of J. M.'s prior sexual abuse of B. M.'s half-sister in the presence of B. M.'s half-brother, J. M.'s criminal record, and his use of violence. See *In the Interest of R. E. M.*, 207 Ga. App. 178, 179 (2) (427 SE2d 512) (1993). As this court found in the earlier case terminating J. M.'s parental rights, there was clear and convincing evidence to show that J. M. had a reprehensible pattern of engaging in the sexual abuse of young children. *In the Interest of D. H.*, supra, 243 Ga. App. at 782-783.

4. J. M. contends that the juvenile court's finding that "even as far back as February 3, 2000, [J. M.] had no chance of regaining custodial rights," proves that he was deprived of his right to due process and to a fair and impartial hearing. He further asserts that he could not be found in noncompliance with a case plan because there was no such plan for his reunification with B. M.

The latter argument completely ignores statutory law. Reasonable efforts toward reunification are not required when a court of competent jurisdiction has made a finding of aggravated circum-

---

[2] J. M.'s admission that he was convicted for indecent exposure while serving in the Marine Corps was part of the psychological evaluation conducted by Thomas D. Earles, Ph.D. that was entered in evidence as "Father's Exhibit 1."

stances including sexual abuse. OCGA § 15-11-58 (a) (4) (A). Nor are such efforts required when the parental rights of the parent to a sibling have been terminated involuntarily. OCGA § 15-11-58 (a) (4) (C).

The finding from the earlier termination proceeding that J. M. had sexually molested a child in the presence of another child combined with expert testimony that J. M. was not responding to therapy provided clear and convincing evidence of deprivation and that such deprivation was likely to continue. *In the Interest of D. H.,* supra, 243 Ga. App. at 782; see *In the Interest of R. E. M.,* supra, 207 Ga. App. at 179. By February 2000, B. M. had been in state custody for many months. The juvenile court was fully aware of the other termination proceeding and the current allegations of violence and sexual misconduct. Evidence of that past and present conduct could properly be considered in determining whether the deprivation would be likely to continue if the child were returned to the parent. *In the Interest of J. O. L.,* 235 Ga. App. 856, 858 (510 SE2d 613) (1998).

Nor has J. M. shown how he was deprived of a fair and impartial hearing. J. M. was present at the termination hearing, represented by counsel, testified on his own behalf, had the opportunity to present witnesses and other evidence, and was able to thoroughly cross-examine the witnesses including those from DFACS. Although J. M. offered little evidence favorable to himself, he was not denied the opportunity to do so.

The evidence clearly shows that B. M. was deprived, the deprivation was due to the lack of proper parental care, and the deprivation was likely to continue and was likely to cause serious mental, emotional, and moral harm to him. See *In the Interest of A. M. V.,* 222 Ga. App. 528, 532 (474 SE2d 723) (1996). The trial court did not err in so finding. The fact that J. M. was unable to regain custody of B. M. is plainly attributable to J. M.'s continuing pattern of misconduct and parental unfitness.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED DECEMBER 3, 2001.

*Christopher T. Adams,* for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Cheeley & Joyner, John P. Cheeley,* for appellee.