A97A1692. IN THE INTEREST OF D. R. W., a child.
(494 SE2d 379)

RUFFIN, Judge.

The mother of D. R. W. appeals the juvenile court's termination

of her parental rights, alleging that she did not receive proper service of the summons and a copy of the petition prior to the termination hearing. For reasons which follow, we affirm.

D. R. W. was originally placed in the custody of the Houston County Department of Family & Children Services ("DFACS") because the juvenile court adjudged her deprived. After D. R. W.'s mother continuously failed to comply with a court-ordered reunification plan, DFACS filed a petition to terminate the mother's parental rights on June 4, 1996, based on the child's deprivation. Thereafter, DFACS purportedly served three summonses on D. R. W.'s mother. The first summons, which was personally served on the mother, was for a hearing to extend DFACS's custody of D. R. W. Nothing in the record indicates that DFACS also served the petition for termination of parental rights on the mother at this time. The juvenile court then issued a second summons to the mother regarding a hearing to terminate her parental rights scheduled for November 6, 1996. That summons was "left at [the] residence" of D. R. W.'s mother on October 11, 1996. The record is devoid of any other evidence regarding the November 6, 1996 hearing. On November 20, 1996, one day prior to the actual termination hearing, a third summons was "served . . . by delivering to and leaving same with personal [sic]." The summons did not contain the name of the individual who received the summons via "personal" service. D. R. W.'s mother did not come to the hearing; however, her court-appointed attorney did appear. Nevertheless, on November 21, 1996, despite the mother's absence, the juvenile court proceeded with the hearing to terminate her parental rights.

At that hearing, the attorney for D. R. W.'s mother told the judge: "I object to proceeding in my client's absence. I think there's [sic] a number of remedies that are possible. One would be for the Court to issue an order to the sheriff's department to go pick her up now. . . . I just ask the Court at the very least that we have a deputy go out and pick up [the mother] and proceed when she gets here." The court declined to do so, and the hearing proceeded. During the hearing and under cross-examination by the child's guardian ad litem, the child's DFACS caseworker testified that she had spoken with the mother on November 20, 1996, regarding the hearing. According to the child's caseworker, the mother knew the time and the place for the hearing and told the caseworker that she would attend.

In its order terminating the parental rights of D. R. W.'s mother, the juvenile court noted, "This [November 21, 1996] hearing was continued from November 19, 1996, at the request of . . . the attorney for [D. R. W.'s mother]. [The mother], despite being properly notified, did not appear for the November 19, 1996, hearing. She was notified again of the November 21, 1996, hearing, and again she failed to appear. Present at the hearing on November 21, 1996, were . . . the

attorney for [DFACS]; . . . the attorney for [D. R. W.'s mother]; and . . . the guardian ad litem in this matter." Although the juvenile court's order does not elaborate on how the mother was "notified" of the November 21 hearing, the record shows that the mother was personally served with a summons on November 20, 1996.

The mother argues on appeal that the juvenile court erred "in terminating [her] parental rights without affording [her] due process and her statutory rights with regard to service of the termination petition, notice of the termination hearing, and scheduling of the termination hearing." According to the mother, pursuant to OCGA § 15-11-83 (c), she was not properly served with process and a petition to terminate parental rights because that statute requires that a termination petition and summons be served at least 30 days before a hearing.

1. "Service of process in a proceeding for the termination of parental rights is governed by OCGA § 15-11-83, and to the extent that they do not conflict with that section, also by OCGA §§ 15-11-26 and 15-11-27. See OCGA § 15-11-91. Pursuant to OCGA § 15-11-83, once the petition for termination of parental rights is filed, the parent is entitled to service, in accordance with OCGA § 9-11-4, of the summons and a copy of the petition. Service must be made at least 30 days before the time set for the hearing." *In the Interest of S. J. M.*, 225 Ga. App. 703, 704 (484 SE2d 764) (1997). OCGA § 9-11-4 (d) (7) provides for personal service or for service "by leaving copies thereof at [the defendant's] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. . . ." The Supreme Court of Georgia has previously determined that "[t]he mere leaving of [a] copy of [the] suit at the residence of the defendant is not reasonably calculated to apprise him of the pendency of an action against him" and is "in violation of the due process clause of the Fourteenth Amendment of the United States Constitution." *Womble v. Commercial Credit Corp.*, 231 Ga. 569, 571 (203 SE2d 204) (1974).

Applying these legal principles, we conclude that based on this record, the service of the summons and termination petition upon D. R. W.'s mother was ineffective. While the above-referenced statutes do not require personal service on D. R. W.'s mother, service of the summons and petition must at *the very least* be left "with some *person* of suitable age and discretion" at the mother's dwelling house or usual place of abode. (Emphasis supplied.) OCGA § 9-11-4 (d) (7).

In this case, a notation that the summons served on October 11, 1996, was "left at residence[,]" without evidence that it was left with a statutorily appropriate person is insufficient service of process as a matter of law. See *Womble*, supra; see also *Reynolds v. Reynolds*, 231 Ga. 178 (200 SE2d 766) (1973). Furthermore, contrary to the juvenile

court's order, our review of the record does not show that D. R. W.'s mother was served with a summons and a copy of the petition for a November 19, 1996 hearing. Nor does the record show that the mother received proper service of the summons and a copy of the petition at least 30 days before the November 21, 1996 hearing. The summons served on November 20, 1996, obviously does not comply with the mandate of OCGA § 15-11-83 (c) that DFACS perfect service "at least 30 days before the time set for the hearing." The fact that the mother had actual knowledge of the proceedings did not cure the defective service. See, e.g., *HAP Farms v. Heard*, 209 Ga. App. 684, 685 (1) (a) (434 SE2d 118) (1993). Because DFACS never properly served D. R. W.'s mother, this case is distinguishable from *In the Interest of S. J. M.*, supra, in which a child's mother was, more than 30 days before a hearing, twice personally served with a summons and a copy of a petition for termination of parental rights. Accordingly, we conclude that the juvenile court erred in determining that DFACS "properly notified" the mother of the termination hearing.

2. We disagree, however, with the mother's contention that the defective service mandates a reversal of the juvenile court's order terminating her parental rights. A party can waive defects in service of process unless an "objection is made at the first practicable opportunity. . . ." *HAP Farms*, supra. At no time did the mother's attorney object to the hearing on the grounds of insufficiency of service of process. Instead, the attorney for D. R. W.'s mother only asked the court for a continuance until a sheriff's deputy could bring the mother to court. When the mother failed to appear for the hearings on November 19 and November 21, her attorney had a good faith basis to raise the issue of service at those times.

Additionally, there was ample evidence in the juvenile court clerk's file with which the mother's attorney could have verified proper service prior to the hearing, if he had chosen to do so. The summonses in this case, which contained the return of service on the back, were filed with the clerk of the juvenile court pursuant to Uniform Juvenile Court Rule 3.1. Therefore, assuming the attorney for D. R. W.'s mother thought the mother's absence resulted from insufficiency of service of process, the attorney should have reviewed the return of service information in the clerk's file, and placed any objections that he had to the service of process on the record prior to proceeding to the merits of the case. "The burden of determining the cause of the [mother's] absence was on [her] counsel. . . ." *Smith v. State*, 139 Ga. App. 515, 517 (1) (228 SE2d 705) (1976). See also Code of Professional Responsibility DR 6-101 (A) (2) (a lawyer shall not handle a legal matter without preparation adequate in the circumstances). The decision of the mother's attorney to proceed instead on the merits of the case in her absence is binding on her. Cf. *Smith v.*

*Emory Univ.*, 137 Ga. App. 785 (225 SE2d 63) (1976). "[B]y failing to raise the issue at the termination hearing, the mother waived the issue of insufficiency of process or service of process. Her attorney appeared at the hearing on her behalf, but at no time did he raise this issue." *In the Interest of S. J. M.*, supra at 705. The fact that the mother was not actually present in court when the hearing occurred and knew nothing about her attorney's decision until later is immaterial. Cf. *Howell v. Howell*, 188 Ga. 803 (4 SE2d 835) (1939).

Furthermore, under the circumstances of this case, we know of no constitutional entitlement mandating the mother's right to appear personally at the termination hearing. See *In the Interest of M. G. F.*, 222 Ga. App. 816, 818 (476 SE2d 100) (1996) (affirming termination of parental rights despite mother's absence). The mother's attorney appeared at the termination hearing and, notwithstanding her absence, cross-examined a DFACS witness and presented a closing argument to the judge. Nothing in the record indicates that the mother's absence during the hearing was not the natural consequence of her own voluntary actions. As a result, we do not find that the juvenile court violated the mother's constitutional rights by proceeding without her.

This record does not support the conclusion that the mother could not have raised the defense of insufficiency of process or service of process prior to the termination hearing. "It was [the] obligation [of D. R. W.'s mother] to bring the affirmative defense to the attention of the court at the proper time if [she] wished to make an issue of it." *Wheeler's, Inc. v. Wilson*, 196 Ga. App. 622, 625 (396 SE2d 790) (1990). After proceeding to the merits of the case — and losing — the mother cannot rely on a defect in service to repeat this hearing. We therefore affirm the juvenile court's order terminating the mother's parental rights to D. R. W.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED DECEMBER 1, 1997.

*Diane M. Zimmerman & Associates, Charles P. Taylor, Alan R. Tawse, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Walter G. Sammons, Jr., Jennifer De Simone*, for appellee.