A00A0072. IN THE INTEREST OF C. K., a child.

(529 SE2d 395)

PHIPPS, Judge.

The Henry County Department of Family & Children Services (DFACS) filed a petition to terminate R. K.'s parental rights to her daughter, C. K., born October 15, 1997. On June 3, 1999, the Juvenile Court of Henry County granted the petition.

Among other things, the court found that R. K.'s mental inability to care for the child is likely to continue or will not be remedied[1] and that she failed to comply with or satisfactorily complete the goals of case plans designed for her reunification with the child even though DFACS made reasonable efforts to assist her in meeting these goals.[2] R. K. challenges the sufficiency of the evidence to support these findings. We must decide whether the evidence, viewed in a light most favorable to DFACS, authorized any rational trier of fact to find by clear and convincing evidence that the parent's rights to custody have been lost.[3]

In an earlier proceeding, the juvenile court terminated R. K.'s parental rights to a son born on August 25, 1995. That termination order was affirmed in *In the Interest of C. D. A.*[4] In that case also, R. K. contended that the evidence was insufficient to support a finding that her mental condition will not improve, and she argued that DFACS did not provide adequate assistance in setting up the reunification plans. These issues were resolved adversely to her.[5]

Evidence presented in this case (and in the earlier proceeding) showed that during her pregnancy with C. K., R. K. did not receive prenatal care, tested positive for cocaine and alcohol, and displayed inappropriate and hostile behavior at the hospital where the child was delivered. As a result, DFACS took custody of C. K. one week

---

[1] OCGA § 15-11-81 (b) (4) (A) (iii), (B) (i).

[2] OCGA § 15-11-81 (b) (4) (C) (iii).

[3] *In the Interest of A. O. A.,* 172 Ga. App. 364, 365-366 (2) (323 SE2d 208) (1984).

[4] 238 Ga. App. 400 (519 SE2d 31) (1999).

[5] Id. at 402-403 (1).

after she was born. The juvenile court later found the child to be deprived.

In connection with the earlier proceeding, Dr. Medlin, a licensed psychologist, performed a psychological evaluation on R. K. on July 21, 1997. Medlin appeared as a witness in this case. He characterized R. K. as mentally deficient based on her intelligence quotient of 61. He also diagnosed her as paranoid schizophrenic with a high probability of chemical dependence. According to Medlin, R. K. meets the criteria for nine different mental illnesses. Medlin testified that it is very likely that R. K.'s mental illness impairs or prevents her from being able to raise C. K. and her condition is so severe that it might not be controllable even by medication. Dr. Medlin found it is unlikely that R. K.'s mental condition has changed since his 1997 evaluation.

In this case, DFACS designed three reunification plans which were in effect from shortly after C. K. was born until the court entered its termination order. These case plans contained five goals requiring R. K. to (1) cooperate with DFACS; (2) obtain housing, maintain a sanitary home, permit inspection of it, and practice personal hygiene; (3) visit the child; (4) attend parenting classes and demonstrate parenting skills; and (5) demonstrate financial ability by paying child support and attempting to find employment or applying for Social Security benefits.

DFACS caseworker Cindy Wheeler testified that R. K. failed to comply with the case plans in most respects. R. K. was required to complete a psychological evaluation and drug and alcohol assessment, undergo psychiatric treatment to obtain medications to control her hallucinations, and attend counseling sessions to monitor her intake of medications. So that DFACS could determine whether R. K. should be reunited with the child, she was required to sign releases authorizing DFACS to communicate with her therapist. R. K. refused to sign the releases or cooperate in scheduling psychiatric appointments and attending counseling sessions. She also failed to find suitable housing, attend parenting classes, pay child support (even though she obtained lump-sum and periodic payments of Social Security benefits), or permit DFACS workers to inspect her home. On visits with the child, R. K. frequently had body odor so extreme that the room had to be sprayed after the visit. When DFACS workers offered assistance in rectifying her hygiene problem, R. K. became angry. Although R. K. maintained at the termination hearing that she had obtained psychological counseling and was taking medication prescribed for her condition, she failed to provide documentation requested by the court.

Pursuant to case plan requirements, DFACS offered assistance to R. K. in scheduling and providing transportation to psychiatric and counseling sessions, completing housing applications, and learn-

ing to maintain a clean and secure house, but she was uncooperative. Because of R. K.'s low IQ, Wheeler reviewed each case plan with her, explained the requirements, and made the case plans increasingly more detailed. Dr. Medlin attempted to assist R. K. in making appointments for counseling sessions, but again she did not cooperate.

The foregoing evidence supports the court's findings concerning the likelihood of continuation of R. K.'s mental condition and of her failure to comply with reunification plan goals.[6] And although DFACS is not legally obligated to provide assistance in meeting these goals, the evidence shows that such assistance was provided here.[7] The termination of parental rights was thus warranted in this case, as in the earlier proceeding.[8]

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED FEBRUARY 7, 2000.

*Brown & Gill, Angela Y. Brown*, for appellant.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, James T. Chafin III*, for appellee.

---

[6] See *In the Interest of A. S. H.*, 239 Ga. App. 565, 567 (1) (521 SE2d 604) (1999) and cits.; *In the Interest of E. C.*, 225 Ga. App. 12 (482 SE2d 522) (1997); *In the Interest of B. P.*, 222 Ga. App. 621 (475 SE2d 673) (1996); see also *In the Interest of J. B. A.*, 232 Ga. App. 345 (501 SE2d 862) (1998); compare *In the Interest of C. G.*, 235 Ga. App. 23 (508 SE2d 246) (1998); *Hooks v. Baldwin County Dept. of Family &c. Svcs.*, 162 Ga. App. 142 (1) (290 SE2d 356) (1982); *Harper v. Dept. of Human Resources*, 159 Ga. App. 758, 760 (3) (285 SE2d 220) (1981).

[7] *In the Interest of S. J. C.*, 234 Ga. App. 491, 494 (2) (507 SE2d 226) (1998).

[8] *In the Interest of C. D. A.*, supra.