A01A0195. IN THE INTEREST OF A. M. W. et al., children.
(547 SE2d 401)

PHIPPS, Judge.

Upon petition by the Atkinson County Department of Family & Children Services (DFACS), the juvenile court terminated B. J.'s parental rights to her three children, A. M. W., S. L. W., and J. L. J. B. J. appeals, claiming that the evidence was insufficient to show *present* parental misconduct or inability or that the children's deprivation was likely to continue. Because the evidence was sufficient, we affirm.

The decision to terminate parental rights involves a two-step inquiry.[1] First, the court must determine whether there is present clear and convincing evidence of parental misconduct or inability.[2] Parental misconduct or inability exists if (1) the child is deprived; (2) the deprivation is caused by the parent's lack of proper parental care or control; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the child.[3] Second, if the court finds clear and convincing evidence of present parental misconduct or inability, then the court must consider whether termination of parental rights is in the best interest of the child.[4] We review the juvenile court's decision to determine whether, viewing the evidence in the light most favorable to DFACS, any rational trier of fact could have concluded by clear and convincing evidence that the natural parent's custody rights had been lost.[5]

So viewed, the evidence in this case showed that DFACS began providing services to B. J. and her children in 1989, following complaints that the children were infested with crawling lice and lived in a filthy home. In 1996, DFACS developed a case plan for B. J. and her husband designed to ensure that the children received adequate medical care and that the home was kept clean.

In March 1997, DFACS investigated a complaint that B. J.'s husband, the father of J. L. J., was sexually, physically, and emotionally abusing A. M. W. and S. L. W. The husband admitted to the allegations. B. J. acknowledged that she was aware of the abuse, but had done nothing to stop it and had not reported it to her DFACS caseworker. The caseworker told B. J. to keep the children away from her husband, but B. J. nevertheless took them back to his house.

In June 1997, the juvenile court found that the children were

---

[1] See generally *In the Interest of J. H.*, 244 Ga. App. 788, 791 (2) (536 SE2d 805) (2000).
[2] OCGA § 15-11-94 (a).
[3] OCGA § 15-11-94 (b) (4) (A).
[4] OCGA § 15-11-94 (a).
[5] *In the Interest of J. L. K.*, 245 Ga. App. 860, 861 (539 SE2d 507) (2000).

deprived, that B. J. had failed to protect them, and that she had no employment, home, transportation, or ability to care for her children. Accordingly, the court granted custody of the children to DFACS for a period of 12 months, and they were placed in foster care. The court's order incorporated a DFACS case plan to reunite B. J. with her children. The case plan provided, among other things, that B. J. would maintain clean and safe housing, obtain and maintain employment, attend counseling, and visit the children regularly. B. J. did not appeal the order.

In February 1998, the juvenile court entered an order extending DFACS's custody of the children for 12 months. B. J. agreed to the extension.

In November 1998, B. J. pled guilty to seven counts of cruelty to children in connection with her husband's earlier abuse of her children.[6] She was sentenced to ten years of probation. A special condition of her probation was that she could not be around any minors without the supervision of an adult who was aware of her criminal history and who had been approved by her probation officer prior to any visits.

In February 1999, the juvenile court entered an order extending DFACS's custody of the children for 12 more months. The order also authorized DFACS to change the goal of its case plan from reunification to termination of parental rights. B. J. did not appeal the order.

In June 1999, DFACS filed a petition to terminate B. J.'s parental rights. In February 2000, with B. J.'s agreement, the juvenile court entered an order extending DFACS's custody of her children for six months.

In April 2000, the court heard the termination petition. B. J.'s DFACS caseworker testified that B. J. had never complied with the requirements of the reunification case plan. She had neither maintained steady employment nor completed counseling. Another caseworker testified that B. J. interacted with her children very little during her visits with them and was unable to control them. This caseworker further testified that A. M. W. said that her mother "always called me stupid and crazy" and that A. M. W. had numerous behavioral problems and had threatened to kill herself. Likewise, a school social worker testified that A. M. W. had inappropriate "outbursts" following visits with her mother, and she opined that the visits were detrimental to the child.

B. J. testified that she had not worked since October 1999 and was dependent upon her live-in boyfriend for support. She admitted

---

[6] B. J.'s husband pled guilty to two counts of child molestation and two counts of aggravated child molestation and was sentenced to fifteen years in prison.

that although she had been ordered to pay $90 a month to support her children, she had failed to make the payments. She also denied having done anything wrong in caring for her children. B. J.'s boyfriend testified that he was self-employed, did not work continuously, had a fluctuating income, and was sometimes "broke."

B. J. asserts that the juvenile court's decision to terminate her parental rights was based on outdated evidence, rather than on her present condition, and that there was insufficient evidence that the children's deprivation would likely continue or not be remedied. We disagree.

At the time of the hearing, B. J. was unemployed and wholly dependent for support on a man who had no regular income. She had not paid child support for her children, and she had failed to comply with the requirements of the DFACS case plan. In addition, she was serving a sentence of probation for cruelty to children which prohibited her from being around minor children without the permission of a supervising adult approved by her probation officer. B. J. admitted that she had failed to intervene in her husband's abuse of the children, but denied that she had done anything wrong. Although she argues that the only reason she failed to protect her children was her fear of her husband, the evidence showed that she voluntarily returned to his home, with the children, contrary to the instructions of her DFACS caseworker. In short, there was ample evidence that B. J. was an unfit parent at the time of the termination hearing, that the children's deprivation likely would continue if her rights were not terminated, and that termination was in the best interests of the children.[7]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED APRIL 4, 2001.

*Sutton & Associates, Berrien L. Sutton, Josephine E. Graddy,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General,*

---

[7] See *In the Interest of J. S.*, 232 Ga. App. 876, 879 (502 SE2d 788) (1998) ("[T]he juvenile court is not required to reunite the children with [the mother] in order to obtain current evidence of deprivation or neglect. [Cits.]") (punctuation omitted); *In the Interest of C. K.*, 242 Ga. App. 269, 271 (529 SE2d 395) (2000) (failure to comply with case plan demonstrates deprivation likely to continue).

*Helms & Helms, F. Shea Browning, Charles R. Reddick, Clayton A. Tomlinson, John C. Shelton*, for appellee.