A06A1636. IN THE INTEREST OF T. J. et al., children.
(637 SE2d 75)

ELLINGTON, Judge.

The Juvenile Court of DeKalb County terminated the parental rights of the mother to 24-month-old twins T. J. and J. J.[1] Jones appeals, contending the court's order is not supported by clear and convincing evidence of parental misconduct as required by OCGA § 15-11-94 (b) (4) (A). The mother also contends the court erred in allowing the testimony of an expert witness. Finding no reversible error, we affirm.

A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. [OCGA § 15-11-94 (b) (4) (A) (i)-(iv).] If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. [OCGA § 15-11-94 (a).]

In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most

[1] The court did not terminate the parental rights of the children's biological father.

favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated. In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

(Footnotes omitted.) *In the Interest of T. L.*, 279 Ga. App. 7, 10 (630 SE2d 154) (2006).

Viewed in this light, the record[2] shows the following relevant facts. The mother has a long history of drug abuse. She admitted using cocaine "off and on" over the past ten years. Others testified the mother has been abusing drugs even longer, since her adolescence. Although, at the time of the hearing, the mother was living in a "three-quarter" house and attending a drug rehabilitation program, her prior attempts at drug rehabilitation had failed. Prison did not deter her drug use. She was jailed for cocaine possession and for probation violations. And despite losing her parental rights to one of her older children, N. J., in 2000, she continued using cocaine. J. J. and T. J. were born prematurely, with congenital syphilis, and addicted to cocaine on August 3, 2003. After the children were taken from her, the mother continued to use cocaine, and admitted using as recently as June 2004. At the time of the hearing, two years after the birth of the twins, the mother had yet to successfully complete a drug rehabilitation program.

Although the mother did complete parenting classes and attended more than half of her scheduled visits with the twins, she failed to maintain steady employment or obtain stable, secure housing. She was often difficult to locate and rarely provided the Department of Family and Children Services with documents verifying her employment, housing, drug treatment, or drug screens. She provided no financial support for the twins. After two years, the mother failed to meet the goals of her case plan. Further, the mother has a long history of failing to parent her children. The unmarried thirty-four-year-old has seven children, ages nineteen, eighteen, sixteen, nine, seven, and two (the twins), all of whom currently live with either their biological fathers or others, some of whom reside out of state.

---

[2] The juvenile court took judicial notice of its prior proceedings in this case. See *In the Interest of S. H. P.*, 243 Ga. App. 720, 722 (1) (a) (534 SE2d 161) (2000) ("A court may take 'judicial notice of records in the same court.'") (citation omitted). When counsel relies on any evidence from such prior proceedings, counsel should cite to that page of the transcript where judicial notice was taken.

1. The mother contends this evidence fails to meet the clear and convincing standard required before a court may terminate parental rights. We disagree.

The mother is bound by the juvenile court's September 3, 2003 deprivation order since she did not appeal that order. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001). This satisfies the first factor for finding parental misconduct or inability under OCGA § 15-11-94 (b) (4) (A) (i) (the children are deprived). The evidence also shows, clearly and convincingly, that T. J. and J. J., who were born addicted to cocaine, are deprived as a result of their mother's unrehabilitated drug addiction and inability to maintain steady employment and an appropriate home. This evidence satisfies the second factor. OCGA § 15-11-94 (b) (4) (A) (ii) (parent caused deprivation). See also *In the Interest of A. T. H.*, 248 Ga. App. 570, 572-573 (1) (547 SE2d 299) (2001) (whether a parent's conduct warrants hope of rehabilitation is a matter for the juvenile court).

The evidence also supports the court's finding that the cause of the deprivation is likely to continue given the mother's long history of (1) abandoning her children to other care givers, (2) using drugs even after her parental rights to one child were severed, (3) using drugs while pregnant, (4) violating her probation, and (5) failing to complete a drug program in the nearly two years since T. J. and J. J. were taken into custody. This evidence satisfies the third factor. See OCGA § 15-11-94 (b) (4) (A) (iii) (deprivation likely to continue). Also, the mother visited the children sporadically and failed to develop a bond with them. As we have held, evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parent. See *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001).

The evidence also shows that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. OCGA § 15-11-94 (b) (4) (A) (iv). T. J. and J. J. have special needs. Both require therapy and regular medical care to treat health conditions stemming from their premature birth and cocaine addiction. The evidence adduced shows that Jones is unable or unwilling to provide the most basic care for her children; consequently, it is highly improbable that she could provide the special care they need. The evidence adduced supports the fourth factor, that the children would be harmed by the continuing deprivation.

As for the second prong of the termination analysis, we are persuaded that the evidence shows that termination of the mother's parental rights is in the best interests of the children, considering the children's physical, mental, emotional, and moral condition and their "need for a secure and stable home." OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here

does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of A. C.*, 272 Ga. App. 165, 168 (2) (611 SE2d 766) (2005). See *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999) (juvenile court has broad discretion in determining how the interest of the child is best served). The children have been in the Department's custody since August 2003. Children need permanency, stability, and a safe environment, which the mother cannot provide. The foster parents, who expressed a desire to adopt the children, had bonded with them, given them a stable home, and had provided for the children's medical needs. The juvenile court was "authorized to consider the children's need for a stable home situation and the detrimental effects of prolonged foster care." (Citation omitted.) *In the Interest of M. L.*, 227 Ga. App. 114, 117 (2) (488 SE2d 702) (1997).

Given this evidence, and having reviewed the entire record in this case, we find there is sufficient clear and convincing evidence to support the juvenile court's decision to terminate the mother's parental rights.

2. The mother contends the trial court erred in allowing a caseworker to testify about the adverse effects of long-term foster care on children. Pretermitting whether the caseworker was qualified to give an expert opinion on that issue, the mother has failed to show how she was harmed by the admission of the testimony in light of the other evidence supporting the juvenile court's decision to terminate. Moreover, during "a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence." (Punctuation and footnote omitted.) *In the Interest of C. G. B.*, 242 Ga. App. 705, 711 (4) (531 SE2d 107) (2000). We find no error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 26, 2006.

*Phyllis R. Williams*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, P. Brian Campbell, Jason S. Naunas, Assistant Attorneys General*, for appellee.