644 S.E.2d 193 (2007)
In the Interest of K.M., et al., Children.
No. A07A0139.
Court of Appeals of Georgia.
March 22, 2007.
*194 James K. Luttrell, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Thompson & Cline, Dana M. Thompson, Canton, for appellee.
RUFFIN, Judge.
The Cherokee County Juvenile Court terminated the parental rights of the mother and father of K.M. and S.M. The mother appeals, arguing that there was insufficient evidence to support termination.[1] Because there was clear and convincing evidence to support the juvenile court's decision to terminate the mother's parental rights, we affirm.
On appeal from an order terminating parental rights, we view the evidence in a light most favorable to the juvenile court's decision, and we affirm "if the record demonstrates that any rational trier of fact could have found by clear and convincing evidence that the parent's right to custody has been lost."[2] So viewed, the evidence shows that the Department of Family and Children Services ("DFCS") became involved with the family in March 2000 upon receiving a report that the mother was not properly caring for S.M., who was an infant. The mother tested positive for cocaine during her pregnancy with S.M., and DFCS had previously received complaints of domestic violence between the unmarried parents. In April 2000, the parents had a domestic dispute, and DFCS required the mother to sign a safety plan providing that she would not take the children to the father's residence. The mother violated the safety plan, and DFCS took K.M. and S.M. into custody in May 2000. At that time, K.M. was nearly seven years old and S.M. was six months old. In its order, the juvenile court found that the mother admitted to cocaine use during her pregnancy, was unemployed, had no stable residence, had failed to properly feed S.M., had been involved in "numerous instances of domestic violence" with the children's father, and had violated the DFCS safety plan. It *195 also held that the "deplorable" condition of the family home was "a health hazard to the children."
In December 2001, the juvenile court found that the mother was making progress toward completion of her case plan, and the children were returned to her custody.[3] They were removed from the mother's custody again in February 2002 after she twice tested positive for methamphetamine use. In July 2002, the DFCS permanency plan for the children was changed from reunification with the mother to non-reunification, based on: the mother's failure to undergo a drug and alcohol assessment or treatment since February 2002; her positive drug test in May 2002; her admission to using methamphetamine; her move to another state without prior notice to DFCS; her failure to maintain stable housing or employment; and her "sporadic" contact with DFCS and the children.
At a June 2003 hearing on the petition for termination, the mother testified that she had returned to Georgia and was living with her father and stepmother. She had been unemployed for a year and had neither a telephone nor a vehicle. She stated that she knew her case plan required her to undergo a drug and alcohol assessment and to attend classes. She admitted that she had paid no child support since February 2002.
At a subsequent hearing in August 2003, a DFCS caseworker testified that the mother completed the substance abuse assessment and treatment required by her initial case plan, but that she did not complete the assessment and treatment that were ordered after the children were removed from her custody in February 2002. According to DFCS, the mother moved twelve times in three years while the children were in DFCS custody. She did not make timely reports of her moves or otherwise keep in contact with DFCS as required by her case plan. At the time of the hearing, the mother had not visited her children in 14 months, although she had seen S.M. at the hospital when the child had surgery in April 2003. She sent two letters and made approximately ten telephone calls to the children during this time. Although the mother was required to pay $20 a month in child support, she had paid none since December 2001.
The caseworker also testified that K.M. and S.M. had been "in limbo" for three years and need stability and a permanent home. K.M. has Reactive Attachment Disorder, injures herself, is manipulative (including making false allegations of abuse) and depressed, and acts out sexually. She is in a therapeutic foster home, receiving individual counseling and medication. A DFCS case manager testified that K.M. was at "a very crucial stage" due to her age and psychological issues, and that she has made "great progress" in the therapeutic foster home. S.M. had extreme temper tantrums and self-injuring behavior when she came into foster care, but has made "dramatic changes," "is developing wonderfully," and is "a normal, happy" child. Two families are interested in adopting S.M. The court appointed special advocate for the children recommended termination of parental rights.
In December 2004, the juvenile court terminated the mother's rights to K.M. and S.M.[4] She appeals, arguing that "[t]here is not clear and convincing evidence that the lack of parental care that caused the deprivation is likely to continue" and that termination is not in the best interests of the children.
The termination of parental rights involves a two-step inquiry.[5] First, the juvenile court determines whether parental misconduct or inability exists.[6] This is shown by clear and convincing evidence that (1) the children are deprived; (2) the cause of deprivation is lack of parental care or control; (3) the cause of deprivation is likely to continue; and (4) "continued deprivation is likely to cause serious physical, mental, emotional, or *196 moral harm" to the children.[7] Once the juvenile court has concluded that these four factors are present, it then determines whether termination of parental rights is in the best interests of the children, "after considering the physical, mental, emotional, and moral condition and needs of the child[ren] . . ., including the need for a secure and stable home."[8]
1. The mother argues that there is not clear and convincing evidence that the causes of deprivation are likely to continue. She stresses that she substantially complied with her case plan; however, all of her compliance occurred before the children had to be removed from her custody due to her drug use. In August 2003, 17 months after the children returned to foster care, the mother had failed to undergo required substance abuse assessment and treatment, had not kept in regular contact with DFCS, and had not paid child support or kept in regular contact with the children. She had been unemployed for a year and had no plan for obtaining employment other than "looking in the newspaper." She was dependent on relatives for housing and transportation.
The juvenile court properly considered the mother's past conduct in determining whether the children's deprivation is likely to continue.[9] Given the mother's history of unemployment, unstable housing arrangements, inability to stay in regular contact with DFCS or the children, and failure to complete substance abuse treatment after she admittedly used drugs, the juvenile court was authorized to find that the cause of the children's deprivation will continue.[10]
2. The mother also contends that termination would not be in the children's best interests, as it is likely that S.M. would be adopted and the two children would be permanently separated. According to the mother, it would be in the children's best interests to have "an opportunity to live together with their mother." She ignores, however, the fact that their previous opportunity to live with her was thwarted by her drug use. And she does not address how she would meet the children's basic needs if they lived with her, as she has no income, or how she would cope with K.M.'s special needs, as she has no telephone or transportation.[11] The children, who have now been under DFCS supervision for nearly seven years, have a demonstrated need for a stable, permanent home.[12] Under these circumstances, clear and convincing evidence supports the finding that termination is in the children's best interests.[13] Thus, the juvenile court did not err in terminating the mother's parental rights.[14]
Judgment affirmed.
BLACKBURN, P.J., and BERNES, J., concur.
NOTES
[1] The father has not appealed this ruling and thus our opinion pertains solely to the mother.
[2] In the Interest of K.J., 269 Ga.App. 78, 603 S.E.2d 497 (2004).
[3] The order was not filed until January 24, 2002.
[4] The order was entered in January 2005.
[5] See In the Interest of J.H., 278 Ga.App. 32, 36, 628 S.E.2d 140 (2006).
[6] See id.
[7] Id.
[8] OCGA § 15-11-94(a).
[9] See In the Interest of K.J., supra at 82(3), 603 S.E.2d 497.
[10] See id. at 82(2), 603 S.E.2d 497; In the Interest of D.E., 269 Ga.App. 753, 755-756(1), 605 S.E.2d 394 (2004).
[11] See In the Interest of K.J., supra at 83(4), 603 S.E.2d 497 (mother's inability to ensure that children attend ongoing therapy a factor in determination of their best interests).
[12] See In the Interest of T.J., 281 Ga.App. 673, 675-676(1), 637 S.E.2d 75 (2006).
[13] See id.; In the Interest of D.A.B., 281 Ga.App. 702, 705(2), 637 S.E.2d 102 (2006).
[14] See In the Interest of T.J., supra; In the Interest of J.G.-S., 279 Ga.App. 102, 104(2), 630 S.E.2d 615 (2006).