652 S.E.2d 613 (2007)
In the Interest of M.A. et al., children.
No. A07A0898.
Court of Appeals of Georgia.
October 2, 2007.
*614 Jodie A. Gentile, Jerry F. Pittman, Douglasville, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Doris C. Orleck, Newnan, for appellee.
RUFFIN, Judge.
The juvenile court terminated the mother's parental rights to her three children, M.A., D.G., and A.E.[1] In her sole enumeration of error on appeal, the mother contends that the Department of Family and Children Services (DFCS) did not demonstrate by clear and convincing evidence that the children's deprivation was likely to continue. As this contention lacks merit, we affirm.
In reviewing a juvenile court's order terminating parental rights, this Court views the evidence in a light most favorable to the juvenile court's ruling to determine whether clear and convincing evidence establishes that the natural parent's rights to custody should be terminated.[2] Viewed in this manner, the evidence demonstrates that the mother has three children with three different fathers: M.A., who was born in 1997; D.G., who was born in 1999; and A.E., who was born in 2004. The mother first became involved with DFCS in September 2002, when her two older children were placed in protective custody after DFCS received reports that the mother was using drugs and did not have stable housing.
Evidently, the children were returned to their mother. Shortly before the mother gave birth to A.E. in April 2004, DFCS received a report that the mother had left her two older children unattended while the mother was using drugs. After A.E. was born, both the mother and A.E. tested positive for methamphetamine. In June 2004, the juvenile court entered an order, finding the children to be deprived and awarding custody to DFCS. The juvenile court also ordered DFCS to pursue a plan to reunify the children with their parents.
DFCS drafted a case plan for the mother that was approved by the juvenile court. The plan required, inter alia, that the mother: obtain a source of income; maintain stable housing; and successfully complete drug and alcohol treatment. The mother signed the plan on May 25, 2004, acknowledging that she understood the plan, would comply with it, and that she knew her parental rights might be terminated if she failed to cooperate.
Approximately eight months later, the juvenile court conducted a review of the mother's compliance and found that the mother had not substantially complied with the reunification plan, had tested positive for drugs, and had not participated in required drug treatment. The court then ordered that the mother be given 90 days in which to demonstrate compliance with the plan and suggested that if the mother did not comply, DFCS might pursue termination of her parental rights.
The mother initially complied with the plan, and in February 2005 a citizen review panel recommended that DFCS continue reunification efforts. However, the mother's efforts apparently waned. In an order dated April 22, 2005, the juvenile court found that the mother had not substantially complied with the plan, including testing positive for illegal drug use, and noted that she had been arrested earlier that year for possessing marijuana. However, as the mother had just started a drug treatment program, the court ordered that reunification efforts continue.
The court appointed special advocate (CASA) met with the mother on June 1, 2005, at which time the mother said she had not been attending drug treatment due to transportation problems. But according to the DFCS caseworker, DFCS provided transportation for the mother. The mother also told the CASA that she had been attending a *615 different drug treatment program. The CASA called that treatment facility, which had no record of the mother attending. When the CASA issued a report in August 2005, she noted the mother's continued failure to attend drug treatment and that the mother was currently incarcerated on drug charges. At that point, the CASA suggested that reunification efforts were no longer appropriate. A citizen review panel reached the same conclusion and recommended that DFCS seek termination of the mother's parental rights so that the children could be placed for adoption. The juvenile court adopted the panel's recommendation by order dated August 12, 2005.
On November 1, 2005, DFCS filed a petition seeking to terminate the mother's parental rights, citing, inter alia, the mother's "chronic unrehabilitated substance abuse." A hearing was conducted on February 24, 2006. At the hearing, a DFCS case manager testified that she offered to pursue inpatient drug rehabilitation for the mother, but that the mother refused, saying that she preferred outpatient treatment. However, the mother never completed any outpatient program and continued to test positive for the presence of drugs. The mother testified, conceding that she had only attended outpatient treatment once in 2005 "and a few times in 2004." According to the mother, she felt inpatient treatment was preferable to outpatient treatment, and she denied having told the DFCS caseworker otherwise.
Jennifer Barnett, a family counselor who counseled the children for approximately six months, also testified. According to Barnett, all three children had been negatively affected by the mother's drug and alcohol use: M.A., the oldest, has been diagnosed with fetal alcohol syndrome; D.G. had emotional problems; and A.E. was developmentally delayed as a result of his pre-natal exposure to drugs. The children also told Barnett about abuse they and their mother suffered at the hands of A.E.'s father. Although M.A. and D.G. initially had problems when placed in a foster home, Barnett testified that D.G. was doing "very well" and that M.A. "has been thriving tremendously" in foster care. Based upon this and other evidence, the juvenile court terminated the mother's parental rights.
Before a juvenile court may terminate parental rights, the court must first find clear and convincing evidence of parental misconduct or inability.[3] Such misconduct or inability is shown through evidence that: "(1) the children are deprived; (2) the cause of deprivation is lack of parental care or control; (3) the cause of deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children."[4] In her sole enumeration of error on appeal, the mother challenges the sufficiency of the evidence supporting the third factor in the testthat the cause of the deprivation is likely to continue. Specifically, she contends that DFCS's failure to provide her with inpatient drug treatmentas recommended by various experts-was the reason the children were deprived. She suggests that once this is remedied, the deprivation will be at an end. We find this argument meritless.
It is well settled that DFCS has no legal obligation to provide the assistance necessary for a parent to complete reunification goals.[5] Moreover, contrary to the mother's contention on appeal, the record shows that DFCS did provide assistance to the mother to help her combat her drug dependence. Indeed, the DFCS case manager offered to pursue inpatient treatment for the mother, but the mother rejected this offer. Although the mother disputed this factual assertion, the juvenile court clearly found the mother's testimony in this regard to be incredible, and we will not gainsay this finding on appeal.[6] *616 Here, the evidence shows that the mother has a substantial drug problem that renders her unfit to care for her children and that she has never completed any treatment regimen to help her combat her dependency. Under these circumstances, the juvenile court was authorized to conclude that the children's deprivation was likely to continue.[7]
Judgment affirmed.
BLACKBURN, P.J., and BERNES, J., concur.
NOTES
[1] The juvenile court also terminated the rights of the children's fathers, none of whom have appealed this ruling.
[2] See In the Interest of B.D., 281 Ga.App. 725, 637 S.E.2d 123 (2006).
[3] See In the Interest of K.M., 284 Ga.App. 442, 444, 644 S.E.2d 193 (2007).
[4] (Punctuation omitted.) Id.
[5] See In the Interest of A.H., 278 Ga.App. 192, 195(1), 628 S.E.2d 626 (2006); In the Interest of C.K., 242 Ga.App. 269, 271, 529 S.E.2d 395 (2000); In the Interest of S.J.C., 234 Ga.App. 491, 494-495(2), 507 S.E.2d 226 (1998).
[6] See In the Interest of K.A.B., 285 Ga.App. 537, 646 S.E.2d 736 (2007) (in termination case, appellate court does not "weigh the evidence or resolve credibility issues").
[7] See In the Interest of A.H., supra at 195-196(2), 628 S.E.2d 626; In the Interest of T.J., 281 Ga. App. 673, 675(1), 637 S.E.2d 75 (2006).