662 S.E.2d 843 (2008)
In the Interest of J.K. et al., children.
No. A08A0097.
Court of Appeals of Georgia.
June 4, 2008.
*844 T. Rabb Wilkerson III, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Williams, Sammons & Sammons, Walter G. Sammons Jr., for appellee.
RUFFIN, Presiding Judge.
The mother of J.K. and H.K. appeals the termination of her parental rights, challenging the sufficiency of the evidence.[1] Because there was clear and convincing evidence to support the juvenile court's decision to terminate the mother's rights, we affirm.
On appeal from a termination of parental rights, we defer to the juvenile court's findings of facts, and we affirm "if the record demonstrates that any rational trier of fact could have found by clear and convincing evidence that the parent's right to custody has been lost."[2] Thus viewed, the evidence shows that on February 12, 2004, J.K.who was four years old at the timewas placed in the custody of his maternal grandmother after the juvenile court determined that the mother was unable to care for him. That same month, the juvenile court placed one-year-old H.K. with her paternal grandmother. Thereafter, on November 17, 2004, the juvenile court found the children deprived and ordered that both children should be placed in the custody of the maternal grandmother, noting that the mother had made no progress on her case plan for approximately nine months, had threatened to flee with the children, was unstable, and could not provide for the children.
By order dated July 20, 2006, nunc pro tunc to March 23, 2005, the juvenile court adjudicated the children delinquent and placed them in the custody of the Department of Family and Children Services ("DFCS"), finding that they were without "proper parental care o[r] control, subsistence, [or] education as required by law, or other care or control necessary for [their] physical, mental[,] or emotional health or morals."[3] The juvenile court also ordered compliance with the terms of a case plan prepared to reunify the mother with the children. Under the plan, the mother was required to complete a psychological evaluation; attend and complete parenting classes; use nonharmful methods of discipline; obtain and maintain a source of income and support for the children, as well as stable, clean, and safe housing; obtain childcare services or otherwise assure proper supervision of children; cooperate with DFCS personnel; and submit to random drug screenings. In May 2005, the juvenile court entered an order finding that the mother "ha[d] made no progress on her reunification plan for a lengthy period of time" and changing the permanency plan to reunification and nonreunification, noting that DFCS's new plan for the children was adoption.[4]
In November 2006, DFCS filed a petition seeking termination of the parental rights of both parents. At the termination hearing held August 2, 2006, the DFCS case manager testified that the children had been in foster care since March 4, 2005 and that the mother had visited them only twice since then.[5] The case manager spoke with the mother on three occasionstwice in February 2006 and once in December 2006. According to the case manager, the mother failed to complete any of the requirements of her case plan and never paid child support.
The mother testified that she was "mentally disabled," suffered from obsessive compulsive disorder ("OCD"), had nightmares about *845 "the kids being burned up in a fire or falling in a river," and felt she had a "split personality" because she "go[es] into two different states of mind." Although she had previously been prescribed medications, she stopped taking them and "threw them in the garbage can." At the time of the hearing, the mother took Loxapine and Paxil to "help [her] sleep and control [her] nerves and keep [her] from having the nightmares." She stated that she had not worked in two or three years because she could not "get along with other co-workers telling customers things . . . about [her]." At the time of the hearing, she lived with and was supported by her fiancéwho received disabilityin Tennessee. When asked to recount her addresses since March 2004, the mother remembered five places, including a hotel, but was unable to recall where she lived for the year between June 2004 and July 2005.
At the hearing, the guardian ad litem recommended termination, emphasizing that "[t]here ha[d] been no support for well over a year and in fact in the entire lives of these children[,] either financial or emotional." After considering the evidence, the juvenile court entered an order in August 2006 terminating the mother's parental rights to the children.
The termination of a parental rights requires a two-step inquiry.[6] First, the juvenile court must find clear and convincing evidence of parental misconduct or inability.[7] To establish parental misconduct or inability, the following four criteria must be proved: "(1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child."[8] If these four factors are determined to exist, the juvenile court must also "determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home."[9]
1. The mother argues that there was not clear and convincing evidence that the children's deprivation is likely to continue. We disagree.
The record shows that the mother failed to complete any of the requirements of her case plan, had not kept in regular contact with DFCS or the children, and had not paid child support. She had been unemployed for at least two years preceding the termination hearing and was dependent on her fiancé for support. Moreover, she demonstrated an inability to maintain stable housing. Under these circumstances, "the evidence supports the juvenile court's determination that the causes of the children's deprivation are likely to continue."[10]
2. The mother also contends that there is insufficient evidence to support the juvenile court's finding that continued deprivation would harm the children. However, "[t]he same evidence supporting a finding that the deprivation is likely to continue also supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child."[11] Here, such harm can be inferred from the mother's complete failure to comply with her case plan and her inability or unwillingness to support the children or to maintain stable housing or employment.[12] Given these facts, the juvenile court did not err in finding that *846 the continued deprivation would harm the children.[13]
Judgment affirmed.
ANDREWS and BERNES, JJ., concur.
NOTES
[1] The father's parental rights were terminated by the same order, but he has not appealed.
[2] In the Interest of K.J., 269 Ga.App. 78, 603 S.E.2d 497 (2004).
[3] In its order, the juvenile court stated that placement with the grandmother was disrupted because she failed to comply with "the [c]ourt's direction not to permit the mother to have unsupervised visits."
[4] Although the mother was notified of the May 2005 hearing, she did not attend.
[5] The second visit occurred the weekend immediately before the termination hearing.
[6] See In the Interest of J.H., 278 Ga.App. 32, 36, 628 S.E.2d 140 (2006).
[7] See id.
[8] Id.
[9] (Punctuation omitted.) Id.; see also OCGA § 15-11-94(a).
[10] In the Interest of C.A.S., 291 Ga.App. 204, 661 S.E.2d 612 (2008); see also In the Interest of K.M., 284 Ga.App. 442, 444(1), 644 S.E.2d 193 (2007).
[11] In the Interest of C.R.G., 272 Ga.App. 161, 164-165, 611 S.E.2d 784 (2005).
[12] See In the Interest of J.A.S., 287 Ga.App. 125, 130(1)(d), 650 S.E.2d 788 (2007); In the Interest of M.D.L., 285 Ga.App. 357, 360(1)(c), 646 S.E.2d 331 (2007).
[13] See In the Interest of J.A.S., supra; In the Interest of M.D.L., supra.