A08A1687. IN THE INTEREST OF C. J. L. C., a child.
(668 SE2d 821)

BERNES, Judge.

The biological mother of C. J. L. C. appeals the juvenile court's order terminating her parental rights.[1] She challenges the sufficiency of the evidence; contends that her parental rights should not have been terminated because her reunification plan was in place for less than one year; and asserts that she was never personally served with a summons and the petition to terminate her parental rights. For the reasons discussed below, we affirm.

> In considering the mother's appeal, we view the evidence in the light most favorable to the juvenile court's

---

[1] The juvenile court also terminated the parental rights of the putative father, but he is not a party to this appeal.

disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated. We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact.

(Citation omitted.) *In the Interest of N. S. E.*, 287 Ga. App. 186, 187 (651 SE2d 123) (2007).

So viewed, the record shows that C. J. L. C. was born out of wedlock on April 9, 2007. Both the 21-year-old mother and the newborn tested positive for methamphetamine, resulting in the Bartow County Department of Family and Children Services ("DFCS") taking custody of the newborn that same day. DFCS filed a deprivation petition, and the juvenile court conducted an evidentiary hearing at which the mother was present with counsel. The juvenile court adjudicated the infant deprived based on the mother's substance abuse and unstable housing and employment. The mother stipulated to the causes of the deprivation. The infant subsequently was placed with his maternal grandparents, with whom he is still living and who wish to adopt him.

DFCS developed a reunification case plan that was discussed with and signed by the mother. Among other things, the plan required the mother to obtain a substance abuse assessment and follow all treatment recommendations; attend and complete a drug abuse treatment program; submit to random drug screens; remain drug free for six consecutive months; obtain a psychological evaluation and comply with treatment recommendations; complete parenting classes; obtain and maintain a source of income and suitable housing; and maintain a bond with the child through regular visitation. The juvenile court thereafter entered an order approving the case plan. The order further required that the mother pay child support and inform DFCS within 48 hours of any change in her address, telephone number, or employment.

After the mother failed to follow the reunification case plan, DFCS petitioned to terminate her parental rights. Although the mother did not attend the subsequent hearing on the termination petition, her counsel made an appearance on her behalf. The juvenile court sua sponte raised the issue of whether the mother had been properly served with a summons and the petition to terminate her parental rights. After hearing from the deputy sheriff under oath, the juvenile court concluded that the mother had been properly served and proceeded with the hearing. The mother's counsel never objected on the ground that there was a defect in service either before or after the juvenile court ruled on the issue.

The DFCS case manager testified that the mother had failed to complete any of her case plan goals other than obtaining an initial substance abuse assessment, despite repeated efforts by DFCS to assist her. The mother had received three different referrals for a psychological evaluation, but no evaluations or recommended treatment had been completed. The mother also had not been employed since the time that the child was removed from her custody and had failed to pay any child support. According to the case manager, the mother lacked stable housing in that she had lived at six different residences since the child was placed in DFCS custody, and her current whereabouts were unknown. Nor had the mother completed any parenting classes despite having received a referral from DFCS.

With respect to substance abuse, the case manager testified that the mother had obtained an initial substance abuse assessment, which included the recommendation that she receive in-patient treatment. The mother, however, acted against medical advice and checked herself out of the treatment facility after only three days. The mother then was offered outpatient treatment, but she declined to participate in the treatment program. After the child was taken into DFCS custody, DFCS was only able to obtain two random drug screens from the mother. She tested positive for methamphetamine both times.

As to the mother's relationship with her child, the case manager testified that the mother had only attended nine out of thirty-six scheduled visitations, and she had not visited or contacted the child in over three months. According to the maternal grandparents, at the last visit with her child the mother appeared "spaced" out and under the influence of drugs, and the child did not appear to know who she was.

In contrast, a case manager who had observed the maternal grandparents with the child on several occasions testified that the child had bonded with them. Moreover, there was testimony that the grandparents were ensuring that the child, who has special needs, was receiving the therapy he needed so that he could thrive. Additionally, the maternal grandparents testified that they wished to adopt the child, and both the case manager and guardian ad litem recommended that the mother's parental rights be terminated and the child be placed with the grandparents for adoption.

Based on this evidence, the juvenile court terminated the mother's parental rights and ordered that the child be placed in the permanent custody of his maternal grandparents for the purpose of adoption.

1. A juvenile court must follow the two-prong test set forth in OCGA § 15-11-94 before terminating a parent's rights.

In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

(Citation omitted.) *In the Interest of R. N. H.*, 286 Ga. App. 737, 739-740 (650 SE2d 397) (2007). The mother only challenges three components of the test for terminating parental rights: that her lack of parental control is the cause of C. J. L. C.'s deprivation; that the cause of the deprivation is likely to continue; and that continued deprivation is likely to harm the child.

(a) There was clear and convincing evidence before the juvenile court that the mother's lack of proper parental care and control was causing the child's deprivation. In deciding this issue, the juvenile court must consider whether there was evidence of

excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotics or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child.

(Citation omitted.) *In the Interest of R. N. H.*, 286 Ga. App. at 740 (1) (b). See OCGA § 15-11-94 (b) (4) (B) (ii).

Contrary to the mother's assertion, the evidence reflected that she had a history of unrehabilitated abuse of a controlled substance that rendered her unable to provide adequately for her child. Specifically, the testimony of the case manager demonstrated that the mother had a methamphetamine abuse problem that remained untreated, despite repeated referrals and efforts to provide assistance by DFCS. Indeed, the case manager testified that the mother twice tested positive for methamphetamine after her child was removed from her custody, and the maternal grandmother testified that at the mother's last visit with the child, she appeared to be under the influence of drugs. Additionally, there was evidence that

the mother had failed to pay child support or complete any of her other case plan goals. Under these circumstances, the juvenile court was entitled to conclude that the mother's lack of proper parental care and control was the present cause of the child's deprivation. See *In the Interest of D. L.*, 268 Ga. App. 360, 363-364 (1) (601 SE2d 714) (2004); *In the Interest of C. G.*, 279 Ga. App. 730, 732 (1) (632 SE2d 472) (2006).

(b) There also was ample evidence to support the juvenile court's finding that the deprivation was likely to continue. The evidence of the mother's substantial, ongoing drug problem and failure to complete treatment even after the child was taken into DFCS custody authorized the juvenile court's finding. See *In the Interest of M. A.*, 287 Ga. App. 719, 721-722 (652 SE2d 613) (2007); *In the Interest of M. N. R.*, 282 Ga. App. 46, 47 (637 SE2d 777) (2006). In addition, the evidence showed that the mother visited her child only sporadically and had failed to develop a bond with him, which also supported a finding that the deprivation was likely to continue. See *In the Interest of T. J.*, 281 Ga. App. 673, 675 (1) (637 SE2d 75) (2006).[2]

(c) There likewise was ample evidence showing that the continued deprivation was likely to result in serious physical, mental, or moral harm to the child.

> We have held that evidence of a mother's repeated failure to remain drug free and her failure to take the steps necessary to reunite with [her child] was sufficient to prove that the continued deprivation would cause the child serious physical, mental, emotional, or moral harm. Additionally, it is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems. Therefore, we find that the evidence supports the juvenile court's finding that the continued deprivation is likely to cause [the child] serious harm.

(Citation and punctuation omitted.) *In the Interest of M. N. R.*, 282 Ga. App. at 48. See also *In the Interest of J. A.*, 286 Ga. App. 704, 707 (649 SE2d 882) (2007) ("[I]t is a fair inference that use of controlled substances by a parent has an adverse effect on a minor child.") (citation and punctuation omitted).

---

[2] The mother's reliance upon *In the Interest of B. F.*, 253 Ga. App. 887 (560 SE2d 738) (2002) and *In the Interest of D. F.*, 251 Ga. App. 859 (555 SE2d 225) (2001) is misplaced. In the *B. F.* case, the parent did not have an ongoing substance abuse problem and had developed a strong, continuing bond with the child. See 253 Ga. App. at 891. The parent in the *D. F.* case likewise did not have an ongoing substance abuse problem and had attended 98 percent of the scheduled visitations with the child. See 251 Ga. App. at 860-861.

2. The mother further contends that the juvenile court erred in terminating her parental rights because her reunification case plan had not been in effect for a full year. But failure to comply with a reunification plan for a period of one year or longer is not a condition precedent to the termination of a parent's rights. See *In the Interest of C. D. F.*, 222 Ga. App. 905, 908 (3) (476 SE2d 654) (1996); *In the Interest of A. M. B.*, 219 Ga. App. 133, 136-137 (464 SE2d 253) (1995). In the present case, virtually no progress had been made by the mother since the case plan went into effect, and she continued her drug use even after her child was removed from her custody, even appearing to be under the influence once while visiting the child. The juvenile court was given no time frame in which the mother might be able to care for the child even if she were capable and willing. In contrast, the maternal grandparents had bonded with the child, were caring for his special needs, and were eager to adopt him. In this context, although a full year had not passed since the case plan was put into place, there was evidence supporting the juvenile court's finding that the termination of the mother's parental rights was in the child's best interest. The trial court therefore committed no error. See *In the Interest of D. L.*, 268 Ga. App. at 364-365 (3); *In the Interest of J. W. H.*, 245 Ga. App. 468, 474 (6) (538 SE2d 112) (2000).

3. Finally, the mother argues that she was never personally served with a summons and the petition to terminate her parental rights. A party waives defects in service of process unless an objection is raised at the first practicable opportunity. *In the Interest of D. R. W.*, 229 Ga. App. 571, 574 (2) (494 SE2d 379) (1997). Notably, the mother's attorney who appeared at the termination hearing on her behalf never raised the issue of service. And after the juvenile court ruled sua sponte that service had been proper, the mother's attorney remained silent, failing to voice an objection to the juvenile court's ruling. Consequently, the mother has waived the issue of insufficiency of process or service of process. See id. at 574-575 (2); *In the Interest of S. J. M.*, 225 Ga. App. 703, 705 (484 SE2d 764) (1997). See also *Plaza Properties v. Prime Business Investments*, 273 Ga. 97, 101-102 (538 SE2d 51) (2000) (concluding that "if a party has not voiced his or her position with regard to a trial court's ruling before it is made, the party must do so once the court makes the ruling," even if the ruling was sua sponte). Compare *In the Interest of S. S.*, 246 Ga. App. 248, 250-251 (540 SE2d 238) (2000) (mother did not waive issue of insufficiency of process, where her attorney raised the issue at the end of the termination hearing).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

854

YALE LAW LIBRARY

DECIDED OCTOBER 6, 2008.

*Anthony Thomasson*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Lorie A. Moss*, for appellee.